KIMBERLY K. JIRKOVSKY, APPELLEE, CROSS-APPELLANT, AND CROSS-APPELLEE, V. DAVID P. JIRKOVSKY, APPELLANT AND CROSS-APPELLEE, AND ALLAIRE JIRKOVSKY, PERSONAL REPRESENTATIVE OF THE ESTATE OF HERMAN JIRKOVSKY, DECEASED, INTERVENOR-APPELLEE AND CROSS-APPELLANT.

525 N.W.2d 615

Filed January 6, 1995.  No. S-93-487.

John R. Brogan, of Brogan & Brogan, for appellant.

Michael J. Murphy, of Angle, Murphy, Valentino & Campbell, P.C., for appellee.

Kevin V. Schlender for intervenor-appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

FAHRNBRUCH, J.

In this dissolution of marriage proceeding, David P. Jirkovsky complains that (1) his wife, Kimberly K. Jirkovsky, should not receive one half of the parties' net marital property, and (2) in dividing the couple's property, the lower courts considered the market value of the cattle and grain he was awarded without reduction for the potential income tax that might become due when these items are sold. We find both of these complaints to be without merit.

Kimberly, in her "cross-appeal" in this court, claims that the Nebraska Court of Appeals erred when it reduced the $92,500 judgment entered in her favor by the district court for York County. Kimberly claims the Court of Appeals reduced the

judgment by $6,787.47 because of anticipated taxes on an IRA and Keogh account. We find that Kimberly's contention is partially correct and modify the Court of Appeals' opinion on this point. Kimberly also contends that the Court of Appeals erred in failing to allow her fees for services rendered by her attorney in that court. We find this contention has no merit.

## FACTS

David and Kimberly were married February 18, 1979, at ages 28 and 20, respectively. Two children were born of the marriage: Beth Anne, on February 6, 1980, and Steven Derek, on August 26, 1982.

In 1972, David graduated from a Texas college with a liberal arts degree. His major was in business administration. From 1972 until 1974, David worked in a beekeeping business. In 1974, he began to drive a truck for Sunflower Beef Packers. He continued to drive a truck until May 1984. While still employed as a truck driver, David also assisted his father, Herman Jirkovsky, with Herman's farming and livestock operations.

In the spring of 1984, David began to farm full time. His father leased to David 240 acres in 1984 for cash rent of $19,560. For the years 1985 through 1990, David paid his father $15,000 cash rent per year. David's father died in 1992. At the time of trial, David had not yet paid his father's estate the 1991 cash rent.

The trial court found that David's father allowed David to use the father's farm equipment without payment of rent. David testified that he had agreed orally to pay for maintenance of the equipment. David also testified that his father had worked daily at David's farming operation from 1984 until his death. David said that his father was to be compensated by receiving all the heifer calves born during and after 1984. David further testified that all female cattle born from 1984 until his father's death were owned by his father's estate at the time of the trial. David admitted that he had not informed anyone, including his wife, of any such agreement with his father. Kimberly testified she had never heard David or his father mention anything about an agreement for compensation to David's father nor had she heard that her father-in-law owned any interest in the parties' cattle.

Kimberly testified that she was the primary care provider for the parties' children and did not work outside the home until the oldest child was 5 years old. She also testified that in 1985, she worked as a desk clerk and a hostess. She stated that she drove a school bus for 3 years. At the time of trial, Kimberly was working for the Nebraska Department of Roads, earning $6.92 per hour in the maintenance department.

Additionally, Kimberly testified that she assisted with the parties' cattle by checking fence and making certain the cattle had water. Kimberly also stated that in the evenings she assisted in separating and herding cattle and in putting up and taking down electric fence. The record reflects that Kimberly also assisted in laying and picking up irrigation pipe and that she worked in the fields disking and cultivating.

The trial court entered its decree dissolving the parties' marriage. Custody of the parties' children was awarded to Kimberly. David was ordered to pay Kimberly $720 per month child support which is to be reduced to $480 per month when the eldest child reaches majority age, is self-supporting, is emancipated, marries, or dies, or until further order of the court. David was ordered to pay Kimberly alimony in the amount of $500 per month for 49 months.

David and Kimberly were each awarded the property he or she brought into the marriage. Thereafter, the trial court deducted $96,000 from the gross marital estate and ordered David to assume and pay all the parties' debts. The court then computed the net value of the marital estate to be $257,000. This net value of the marital estate was divided equally between Kimberly and David, each to receive $128,500 in property or cash or a combination thereof.

To satisfy the $128,500 in value set over to Kimberly, the trial court awarded her a $21,000 IRA account, an $11,000 Honda automobile, and $4,000 in miscellaneous property. In addition, the trial court entered a $92,500 judgment in favor of Kimberly and ordered David to pay it.

The trial court awarded David the parties' cattle, grain bins, farm equipment and machinery, grain, prepaid 1993 farm expenses, co-op deferred patronage, his own IRA and Keogh accounts, miscellaneous property in David's possession except

that specifically awarded to Kimberly, and bank accounts in David's name.

David appealed the district court's rulings to the Court of Appeals. That court generally affirmed the district court's decree, but reduced Kimberly's $92,500 judgment by $6,787.47. See *Jirkovsky v. Jirkovsky*, 94 NCA No. 22, case No. A-93-487 (not designated for permanent publication). Although Kimberly claims in her brief, under the heading "Statement of the Case," that the $6,787.47 reduction was due to future taxes on David's IRA and Keogh accounts, the court's opinion reflects that $4,724.47 of the reduction was attributable to its de novo review of the evidence and its finding that David brought into the marriage $9,448.94 more property than the $40,000 of property found by the trial court. In the Nebraska Supreme Court, Kimberly has not challenged the Court of Appeals' finding that the value of the property David brought into the marriage was $49,448.94 rather than $40,000.

The Court of Appeals held that only $2,063 of its reduction of Kimberly's judgment was due to anticipated future taxes on David's IRA and Keogh accounts.

David's father intervened in the original action because of his alleged ownership of the heifers. He also sought $23,915.74 as reimbursement for expenses he claimed he had advanced to David from 1983 or 1984 to 1992 for the parties' farming operations. While the trial was pending, David's father died and the personal representative of his estate revived the petition in intervention. The district court found that the intervenor failed to prove the existence of such agreements between David and his father. The Court of Appeals affirmed the district court's decision in this regard. The intervenor did not assign any errors to this court.

## ASSIGNMENTS OF ERROR

In this court, David argues that the Court of Appeals erred in finding that (1) it was reasonable to divide the net marital estate equally between Kimberly and David, and (2) the marital estate should not be reduced by the amount of the income tax David will have to pay upon the sale of the cattle and grain awarded to him.

In her "cross-appeal," Kimberly claims that the Court of Appeals erred in (1) not awarding her fees for services rendered by her attorney in that court and (2) discounting the IRA and Keogh accounts by 25 percent.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court's review is de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994); *Pendleton v. Pendleton*, 242 Neb. 675, 496 N.W.2d 499 (1993).

A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Pendleton, supra*; *Uhing v. Uhing*, 241 Neb. 368, 488 N.W.2d 366 (1992).

## ANALYSIS

David first argues that the Court of Appeals erred in finding that it was reasonable for the trial court to divide the parties' net marital estate equally between David and Kimberly. We have held that in a dissolution of marriage proceeding the ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Reichert, supra*; *Pendleton, supra*. The Supreme Court has recognized that the general rule is to award a spouse one-third to one-half of the marital property, but the court has also recognized that a division of property is not subject to a precise mathematical formula. See, *Reichert, supra*; *Pendleton, supra*.

The record reflects that during their 13-year marriage both parties worked to promote their family farm operation. The Court of Appeals held that the growth of the marital estate

cannot be attributed more to the efforts of one party than the other. After our de novo review of the record, we agree with that finding. Although adjustments in the trial court's decree are necessary, we find that there was no abuse of discretion by the trial court in finding that the net marital estate of parties should be divided nearly equally between David and Kimberly. David's assignment of error in this regard is without merit.

David also contends that the Court of Appeals erred in not finding that the value of the net marital estate should be reduced by reason of the income tax consequences when the cattle and grain he was awarded is sold. This error, although assigned by David in the Court of Appeals, was not discussed or argued in his Court of Appeals brief. Therefore, that court declined to consider it.

Errors assigned and not argued are generally not considered. *In re Interest of T.M.B. et al.*, 241 Neb. 828, 491 N.W.2d 58 (1992); *Carlson v. Zellaha*, 240 Neb. 432, 482 N.W.2d 281 (1992). To be considered by an appellate court, an error must be both assigned and discussed in the brief of one claiming that prejudicial error has occurred. *Vredeveld v. Clark*, 244 Neb. 46, 504 N.W.2d 292 (1993); *Regency Homes Assn. v. Egermayer*, 243 Neb. 286, 498 N.W.2d 783 (1993). In the absence of plain error, where an issue is raised for the first time in a higher appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. See *In re Estate of Trew*, 244 Neb. 490, 507 N.W.2d 478 (1993). We hold that when an assignment of error has been made in the Court of Appeals and is not decided by that court because such assignment of error was not discussed or argued in the proponent's brief filed in that court, the Supreme Court will not consider such assignment of error. Therefore, this court will not consider David's assignment of error that the Court of Appeals erred in failing to consider the tax consequences to David when and if he sells his cattle and grain. Neither will we note plain error on that issue.

We now turn to Kimberly's "cross-appeal" in this court. Kimberly argues that the Court of Appeals erred in discounting the IRA and Keogh accounts involved here by 25 percent because of future taxes on those accounts. As a result, the Court

of Appeals modified the trial court's decree by reducing the amount of the judgment awarded to Kimberly by $2,063 because of the anticipated tax.

In *Buche v. Buche*, 228 Neb. 624, 628, 423 N.W.2d 488, 492 (1988), this court adjusted the valuation of an IRA included in the marital estate from $17,418.24 to "approximately $13,000 for inclusion in the marital estate." This was almost a 25-percent reduction. The district court excluded the proffered testimony of a certified public accountant on the tax consequences associated with the IRA. However, this court held that the income tax, which will have to be paid eventually, is a proper consideration in determining the present value of the account. In *Buche*, the court stated:

> The controversy concerning the IRA relates to its valuation. The account amounts to $17,418.24, but if it was withdrawn at this time and divided between the parties, the proceeds would amount to only $11,418.24. The trial court refused to permit a certified public accountant, called by the respondent, to testify that both an income tax and a penalty would have to be paid if the respondent withdrew the account at this time. Since the account will not be withdrawn, the penalty may be disregarded, but the income tax will have to be paid eventually and is a proper consideration in determining the present value of the account. We find that the IRA should be valued at approximately $13,000 for inclusion in the marital estate.

*Id.* at 628, 423 N.W.2d at 492.

The Court of Appeals applied *Buche* to the present case and reduced the value of the IRA and Keogh accounts by 25 percent due to potential income tax liability. That decision is not supported by the evidence. There is no expert testimony in the record of the tax consequences associated with the IRA and Keogh accounts involved here. Nor was there testimony as to whether the accounts at any particular time would be withdrawn and thus subject to a penalty.

The *Buche* opinion does not stand for the proposition that a 25-percent reduction for taxes is appropriate in every case. The rate of income tax may vary from case to case, depending upon

the payor's circumstances. Although the *Buche* opinion states that the trial court did not allow the accountant to testify, it is inherent in the *Buche* opinion that this court found the trial court should have received the accountant's testimony concerning the income tax and penalty which would have to be paid and that this court relied upon that proffered testimony in making the 25-percent reduction in value. This court's 25-percent reduction was not based upon conjecture. It was obviously based upon the accountant's proffered testimony. In the present case, no credible evidence exists in the record as to what the tax ramifications associated with the accounts will be in the future. For the reasons stated above, we reverse the Court of Appeals' decision reducing the IRA and Keogh accounts involved here by 25 percent. Considering that the trial court erred in determining the value of property David brought into the marriage and that the Court of Appeals erred in reducing the value of the IRA and Keogh accounts involved here, the Court of Appeals should have reduced Kimberly's judgment against David only to $87,775.53.

Finally, Kimberly argues that the Court of Appeals erred in not awarding her attorney fees for services in that court. In an action for dissolution of marriage, the award of attorney fees is discretionary with a lower court and in the absence of an abuse of discretion will be affirmed. *Preston v. Preston*, 241 Neb 181, 486 N.W.2d 902 (1992). An award of attorney fees depends on a variety of factors, including the amount of property and alimony awarded, the earning capacity of the parties, and the general equities of the situation. *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994); *Preston, supra*.

Given the almost equal division of the net marital estate of the parties and the size of the share received by each party, it was not an abuse of discretion for the Court of Appeals to overrule Kimberly's motion for attorney fees.

## CONCLUSION

The decision of the Nebraska Court of Appeals in this case is affirmed except that the $85,712.53 judgment entered by the Court of Appeals in favor of Kimberly K. Jirkovsky is increased to $87,775.53.

AFFIRMED AS MODIFIED.