JULIE A. ELSE, APPELLEE, V. TIMOTHY L. ELSE, APPELLANT.

558 N.W.2d 594

Filed January 14, 1997.    No. A-95-488.

Barbara B. McCall for appellant.

Howard F. Ach, of Ach Law Office, and Kathy Pate Knickrehm for appellee.

MILLER-LERMAN, Chief Judge, and HANNON and IRWIN, Judges.

MILLER-LERMAN, Chief Judge.

Timothy L. Else appeals a divorce decree entered by the district court for Thayer County dissolving his marriage to Julie A.

Else. Generally, he challenges the district court's division of property and order that he pay all reasonable and necessary medical and dental expenses incurred by or on behalf of their daughter Emily. For the reasons stated below, we affirm.

## FACTUAL BACKGROUND

Timothy and Julie were married March 16, 1980. Three children were born of the marriage: Emily, born January 27, 1982; Natalie, born December 26, 1984; and Andrew, born November 20, 1985. Emily has had severe health problems since birth. When Emily was born, she had a medical condition requiring surgery and a long hospitalization. When Emily came home after the long hospitalization, Timothy changed the family's insurance carrier because he was dissatisfied with the coverage provided by their previous carrier for Emily's medical expenses. The new insurance carrier refused to extend coverage for Emily. Since that time, Emily has been uninsured. Emily currently suffers "lung problems" and asthma. Her medical expenses are paid, in part, by medicaid and, in part, by a grant for which Julie applied. The remainder of Emily's medical expenses must be paid by the parties.

Timothy has a degree from the University of Nebraska in agricultural economics. During the early years of the marriage, he was employed in several agricultural enterprises and farmed part time. In 1986, he began farming full time. In 1991, Timothy, his father, and his brother formed 3-E Farms, a subchapter S corporation. Timothy executed a bill of exchange, which transferred Timothy and Julie's homestead, farm equipment, livestock, growing crops, grain, and debt to the corporation. Timothy is a minority shareholder in the corporation with a net interest of 40.8 percent. Timothy's adjusted gross income for 1993 was $37,195.

At the time of the parties' marriage, Julie was a beautician. After Emily's birth, Julie remained in the home to care for Emily for a period of time. In 1983, Julie opened a beauty shop, which she later sold for $7,500. Julie then worked part time in her father's pharmacy for a couple of years. In 1988, Julie opened a day-care business, which she sold in April 1991 for roughly her related debt. Although at the time of trial Julie was

on a leave of absence until January 1, 1995, she was employed part time at Blue River Agency on Aging as a senior center director and generally worked 25 hours per week at $5 per hour. Julie was also working approximately 8 hours per week at a movie theater. In addition to the above businesses and periods of employment, Julie was primarily responsible for the care of the parties' three children and also helped with Timothy's farming activities on occasion.

The parties separated in February 1993. Julie filed for divorce on April 27, 1993. Trial was held November 4 and 11, 1994. It is clear from the evidence that the parties are quite hostile toward one another.

The bulk of the evidence related to the division of the marital estate. The parties' largest assets are Timothy's interest in 3-E Farms and 160 acres of farmland. The parties stipulated to the receipt of evidence showing that the value of the 160 acres of farmland was $176,000.

The value of Timothy's interest in 3-E Farms was disputed. The record includes financial statements for Timothy and for the corporation dating from March 1993 to April 1994, and corporate and individual tax returns. Timothy offered appraisals of certain assets of 3-E Farms prepared October 31 and November 3, 1994, and a current financial statement of 3-E Farms dated November 4, 1994. These exhibits, numbered 35, 37, and 40, valued 3-E Farms' net worth as $451,997, placing Timothy's 40.8 percent interest at approximately $184,415. The district court refused to consider Timothy's appraisal and current financial statement of 3-E Farms except for the limited purpose of showing Timothy's ability to finance an award to Julie.

The evidence which was received at trial values Timothy's interest in 3-E Farms from $268,687 to $353,936. The evidence is composed of individual and corporate financial statements offered by Timothy and dated from March 1991 to April 1994.

In refusing to consider the more recent valuation offered by Timothy for the purposes of property division and valuation, the district court concluded that the value of the marital estate should be determined on the date of separation. The court stated:

But, nobody is required as far as I know to work for someone else or to take risks for someone else or to make investments for someone else after the divorce has been filed and summons served, and it doesn't make any sense.

. . . .

. . . But when I was practicing and the older cases suggested that the best way of doing it was to determine what the people owed and owned at the time of the separation . . . .

On March 1, 1995, the district court prepared a docket entry of its findings, and a decree was prepared and filed on May 10. The district court found the marriage to be irretrievably broken. Custody of the three children was awarded to Julie with reasonable visitation by Timothy. Timothy was ordered to pay child support in the amount of $765 per month beginning March 1, 1995, retain his current medical insurance coverage for Natalie and Andrew, and pay the reasonable and necessary medical and dental bills of Emily. Timothy and Julie were ordered to share the reasonable and necessary medical and dental costs for Natalie and Andrew not covered by insurance.

Regarding the division of property, the district court awarded Julie her premarital property, the personal property in her possession, her IRA, and a 1988 Lincoln Town Car. She was also ordered to be responsible for the payment of the AT&T credit card debt and the Dillard's credit card debt. Timothy was awarded the balance of the marital property and made responsible for the remainder of the parties' debt. In addition, in lieu of an award of property, Timothy was to pay Julie $14,000 on March 1, 1995, and thereafter, $133,000, payable in monthly payments of $1,112.47 for 240 months at 8-percent per annum interest. This appeal followed.

## ASSIGNMENTS OF ERROR

For his assignments of error, Timothy contends that the district court erred in (1) admitting exhibits 19, 23, 35, 37, and 40 for a limited purpose only, (2) refusing to consider the value of the parties' interest in 3-E Farms as of the date of trial, (3) failing to determine the value of the marital estate, (4) awarding Julie $157,900 of assets from a marital estate of undetermined

value, (5) incorrectly computing the amount of the parties' debt, and (6) requiring him to be solely responsible for the medical and dental costs for Emily.

## STANDARD OF REVIEW

In an appeal involving an action for dissolution of marriage, an appellate court's review of a trial court's judgment is de novo on the record to determine whether there has been an abuse of discretion by the trial judge. In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995); *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995); *Policky v. Policky*, 239 Neb. 1032, 479 N.W.2d 795 (1992).

A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right in matters submitted for disposition in a judicial system. *Marr v. Marr*, 245 Neb. 655, 515 N.W.2d 118 (1994); *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994).

## ANALYSIS

We first address Timothy's assigned errors regarding the admission of exhibits 19, 23, 35, 37, and 40 for a limited purpose and the district court's refusal to consider the value of 3-E Farms at the time of trial. Based upon our review of the record, exhibit 19, which is an April 13, 1994, financial statement for Timothy, and exhibit 23, which is a December 14, 1993, financial statement for 3-E Farms, were admitted without limitation. However, the record shows that the district court received exhibits 35, 37, and 40 for a limited purpose because the court used the date of separation as the valuation date for the marital estate.

To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or

excluded. *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996); *Hoeft v. Five Points Bank*, 248 Neb. 772, 539 N.W.2d 637 (1995).

Under Nebraska jurisprudence, an appropriate division of marital property turns on reasonableness as determined by the circumstances of each particular case. *Thiltges, supra*; *Jirkovsky, supra*. See Neb. Rev. Stat. § 42-365 (Reissue 1993). To determine the value of a closely held corporation, the trial court may consider the nature of the business, the corporation's fixed and liquid assets at the actual or book value, the corporation's net worth, marketability of the shares, past earnings or losses, and future earning capacity. *Bryan v. Bryan*, 222 Neb. 180, 382 N.W.2d 603 (1986). The method of valuation used for a closely held corporation must have an acceptable basis in fact and principle. *Keim v. Keim*, 228 Neb. 684, 424 N.W.2d 112 (1988); *Bryan, supra*. Based on the case law and the facts of this case, the valuations of 3-E Farms and its assets set out in exhibits 35, 37, and 40, which were determined 1 week before trial, bear a rational relationship to the property to be divided upon dissolution. See *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982) (using values at time of trial when modifying district court's disposition of property). See, also, *Keim, supra*; *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986); *Hoffmann v. Hoffmann*, 188 Neb. 408, 197 N.W.2d 373 (1972). We conclude the district court erred in failing to receive exhibits 35, 37, and 40 without limitation. These exhibits included valuations of marital assets as appraised the week prior to trial. Such valuations were clearly relevant to the court's reasonable and equitable division of property upon dissolution.

For the sake of completeness, we note that the majority of other jurisdictions permit the date of trial or date of dissolution as the valuation date for marital property. See, e.g., *Brown v. Brown*, 914 P.2d 206 (Alaska 1996); *In re Marriage of Finer*, 920 P.2d 325 (Colo. App. 1996); *Moriarty v. Stone*, 41 Mass. App. 151, 668 N.E.2d 1338 (1996); *Romkema v. Romkema*, 918 S.W.2d 294 (Mo. App. 1996); *In re Marriage of Meeks*, 276 Mont. 237, 915 P.2d 831 (1996); *Peterson and Peterson*, 141 Or. App. 446, 918 P.2d 858 (1996). See, also, *Doser v. Doser*, 106

Md. App. 329, 664 A.2d 453 (1995); *In re Marriage of McLaughlin*, 526 N.W.2d 342 (Iowa App. 1994) (using date of dissolution). Compare, *In re Marriage of Long v. Long*, 196 Wis. 2d 691, 539 N.W.2d 462 (Wis. App. 1995) (using date of agreement or date of filing unless another date is more equitable); *Stanley v. Stanley*, 118 N.C. App. 311, 454 S.E.2d 701 (1995) (using date of separation); *In re Marriage of Cray*, 254 Kan. 376, 867 P.2d 291 (1994) (finding date of filing to be most logical).

In order for the improper exclusion of evidence to be reversible error, the exclusion of evidence must unfairly prejudice a substantial right of Timothy's. See *McIntosh, supra*. Although we cannot determine from the docket entry or the divorce decree what value the district court placed on Timothy's interest in 3-E Farms, we have reviewed the range of 3-E Farms' valuation evidence as though exhibits 35, 37, and 40 had been admitted. Based on our de novo review and given the property award as reflected in the findings and decree, we conclude that Timothy was not prejudiced by the district court's refusal to receive the valuations contained in exhibits 35, 37, and 40 without limitation. We have also reviewed the division of property in light of Timothy's other assignments of error and do not find an abuse of discretion in the division of marital property and, therefore, conclude that Timothy's assignments of error pertaining to calculation and division of property are without merit.

We address Timothy's final assignment of error that the district court erred in ordering him to pay all reasonable and necessary medical and dental costs for Emily. We review the district court's determination de novo for an abuse of discretion. See, *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995); *Druba v. Druba*, 238 Neb. 279, 470 N.W.2d 176 (1991).

In *Druba*, the Nebraska Supreme Court held that a trial court may make appropriate orders as to the manner in which future medical and dental expenses of the children, after the insurance payments, are to be shared. In *Druba*, the husband had never provided health insurance for the wife or the children, and his *cavalier attitude* was never explained. The Supreme Court observed that a parent who does not wish to provide such

insurance must be "ready to pay for health care for the children." *Id.* at 284, 470 N.W.2d at 180.

We also note that the November 8, 1995, revisions to the child support guidelines, effective January 1, 1996, contain the following new provision:

> O. **Health Care.** Children's health care needs are to be met by requiring either parent to provide health insurance as required by state law, and the court may apportion all nonreimbursed children's health care costs between the parents according to the same formula used to determine each parent's share of support.

Although not in effect at the time of trial, this new guideline provides, at a minimum, conceptual direction to a court in circumstances such as presented by the instant case.

In the case before us, it is clear from the record that Timothy chose to change insurance carriers after he was dissatisfied with the coverage provided by their insurance carrier for Emily's surgery and long hospitalization. When Timothy changed insurance carriers, the new insurance carrier refused to cover Emily. There is evidence that Timothy was warned of this possibility prior to canceling the insurance policy which was then in force. Although we cannot determine from the record the amount of each parent's respective share of support for their children, the record shows that the disparity in income and earning capacity between Timothy and Julie is obvious and great.

Timothy argues that Julie is "likely to make financially irresponsible decisions, possibl[y] to hurt Tim. It is unconscionable for the Court to put Julie i[n] a position where she is allowed to incur unlimited medical expenses which Tim is obligated to pay in full." Brief for appellant at 49. This argument is without merit because Timothy is only required under the court's order to pay "reasonable and necessary" medical expenses incurred for Emily.

For the reasons stated above, we conclude that the district court did not abuse its discretion in ordering Timothy to be solely responsible for all reasonable and necessary medical expenses incurred for Emily.

## CONCLUSION

The district court committed error in failing to receive without limitation exhibits relating to the valuation of marital assets which were prepared near the date of trial. However, Timothy was not prejudiced thereby. Timothy's remaining assigned errors regarding the division of property are without merit. Finally, we conclude that the district court did not abuse its discretion in ordering Timothy to pay all reasonable and necessary medical and dental costs incurred for Emily.

AFFIRMED.