DAWN R. WALKER, APPELLANT AND CROSS-APPELLEE, V.
VICTOR W. WALKER, APPELLEE AND CROSS-APPELLANT.
618 N.W. 2d 465

Filed October 17, 2000.    No. A-99-903.

Timothy J. Pugh, of McGrath, North, Mullin & Kratz, P.C., for appellant.

John S. Slowiaczek and Willow T. Head, of Lieben, Whitted, Houghton, Slowiaczek & Cavanagh, P.C., for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

CARLSON, Judge.

## INTRODUCTION

Dawn R. Walker appeals from the property division made by the district court in this dissolution action. Victor W. Walker cross-appeals, asserting that the court should have ordered Dawn to reimburse him for financial support he provided Dawn while she was obtaining her undergraduate and law degrees. For the reasons set forth below, we affirm as modified.

## BACKGROUND

Dawn and Victor were married on July 3, 1991, in Cass County, Nebraska. No children were conceived during that marriage. Victor, however, had four children from a previous marriage, which had ended in divorce on July 29, 1988. Three of those children resided with Victor and Dawn during their marriage; the fourth was attending college and out of the home. Child support is not an issue in this appeal. Dawn had also been married before. That marriage ended in divorce in 1988 or 1989; she has no children.

In May 1989, some 6 or 7 months after Victor and Dawn began dating, she moved into Victor's house in Papillion, Nebraska. Victor had been awarded that house, which had been the marital home during Victor's previous marriage, in the divorce from his first wife. On or about December 27, 1989, Victor entered into a consent decree, pursuant to which he agreed to pay his first wife $20,750 for past-due payments arising from the property settlement agreement in that divorce. In order to pay that amount, Victor refinanced his house in Papillion. Prior to doing so, he had placed Dawn's name on the legal title.

On or about August 9, 1990, Victor and Dawn purchased a residential lot on Beaver Lake in Cass County. The purchase price for the lot was $35,000, of which $32,000 was financed. On March 29, 1991, Victor and Dawn sold the Papillion home, with net proceeds of $9,136.99. Those proceeds were applied to a construction loan for building a house at Beaver Lake. Victor and Dawn then moved to a mobile home at Beaver Lake while their house was under construction. They were married at Beaver Lake on July 3, 1991, and moved into their completed house in April 1992.

At the time Dawn and Victor began dating, Dawn was a legal secretary for the Black & North law firm, which later became a part of the McGrath, North law firm. Her average salary at that job was approximately $39,000 per year. She continued working full time for the law firm until August 1995, during which time she attended undergraduate classes at the University of Nebraska at Omaha and later Bellevue University. She graduated from Bellevue University in January 1995.

In August 1995, Dawn began law school at Creighton University. She was not employed during her first year of law school, although she did receive a $3,000 consulting fee from McGrath, North. She worked as a law clerk during the summers of 1996 and 1997. She earned approximately $5,400 in 1996 and approximately $15,700 in 1997. In the fall of 1997, Dawn accepted a position as an associate with the Blackwell, Sanders law firm in Kansas City, Missouri, and at the time of the hearing was earning $70,000 per year.

Throughout the marriage, Victor worked as a federal probation officer, a job he had held since 1974. His annual salary was $65,000 to $70,000 per year.

Dawn moved out of the family home in December 1997 and filed for divorce on January 16, 1998. She graduated from Creighton Law School in May 1998. At that time, she had a student loan indebtedness of $63,800. The record shows that those student loans were approximately $20,000 in excess of her direct educational expenses.

Dawn's petition for divorce was heard on May 21, 1999. The trial court entered the instant decree on August 2. In that decree, the court held that the marriage should be dissolved and divided the marital estate. Of specific relevance to the instant appeal, the court valued the Beaver Lake house and property as of January 1, 1998, at $228,500, less a real estate commission of $14,500. The house was awarded to Victor, subject to a $42,500 lien by Dawn. Victor was directed to refinance the house within 6 months in order to pay Dawn, or, if refinancing were unavailable, to sell the house. Dawn was awarded a 1992 Saab, including responsibility for the loan on it, and Victor was awarded two vehicles: a 1991 GMC Jimmy, including the loan on it, and a 1995 Pontiac. Victor was also awarded a boat and a "Sea Doo."

Each party was awarded the household goods which were in his or her respective possession, and each retained his or her respective checking and savings accounts. Each party was awarded his or her respective pension, retirement, and IRA accounts. Dawn was assigned responsibility for the debt on all her student loans. Neither party was ordered to pay alimony.

Dawn filed the instant notice of appeal on August 10, 1999.

## ASSIGNMENTS OF ERROR

Dawn asserts that the trial court erred in its valuation and division of the marital estate. On cross-appeal, Victor asserts that the trial court erred in failing to order Dawn to compensate him for the financial support he purportedly provided her during the marriage while she was obtaining her undergraduate and graduate degrees.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995). Similarly, the division of the marital estate is initially left to the discretion of the trial court and will be reviewed by an appellate court de novo on the record and affirmed absent an abuse of discretion. *Shockley v. Shockley*, 251 Neb. 896, 560 N.W.2d 777 (1997). Generally, the division of property in a dissolution case, including indebtedness, is based on equitable principles, and its purpose is to divide the marital assets equitably. *Hajenga v. Hajenga*, 257 Neb. 841, 601 N.W.2d 528 (1999).

A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Westgate Rec. Assn. v. Papio-Missouri River NRD*, 250 Neb. 10, 547 N.W.2d 484 (1996).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Hajenga v. Hajenga, supra.* When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witness and accepted

one version of the facts rather than another. *Id.*; *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995).

## ANALYSIS

### Dawn's Appeal

Dawn argues that the trial court erred in its valuation of the Beaver Lake residence. The trial court set a valuation of $228,500 as of January 1, 1998, from which it deducted $14,500 for a real estate commission (slightly more than 6 percent of the valuation). Dawn first suggests that "[t]here was absolutely no evidence concerning the value of the property in January 1998." Brief for appellant at 10.

We disagree. Victor had urged a valuation of $187,000, which was the amount found in an appraisal conducted by the parties in 1995. Dawn had urged a valuation of $270,000, based upon an appraisal conducted on January 14, 1999. The court valued the property at $228,500 as of January 1, 1998, which is the approximate date on which Dawn left the family home.

That valuation set by the court represents the average of the two appraisal values. There is no mathematical formula by which property awards can be precisely determined; they are to be determined by the facts in each case. *Shald v. Shald*, 216 Neb. 897, 346 N.W.2d 406 (1984). In *Shald v. Shald*, the Supreme Court held that it is not error for a trial court to place a value on real property that is between the high and low figures presented by the parties. That approach has been followed by this court. In *Anania v. Anania*, 6 Neb. App. 572, 583, 576 N.W.2d 830, 838 (1998), we stated:

> We are in the same position as the Nebraska Supreme Court was in [in] *Shald v. Shald* . . . where the parties' three appraisers differed on the value of certain real estate. The trial court used a figure between the high and the low figure. The Supreme Court, deferring to the trial court's discretion, could not say that the trial court had erred in the value it placed on the real estate. Neither can we do so in the case at hand.

We similarly find no error in the instant case.

Dawn also takes issue with the trial court's use of the January 1, 1998, valuation date. That was the approximate date

when Dawn left the marital residence. Dawn insists that the only appropriate date was the date of trial or dissolution. We disagree. There is some authority for that proposition, see, e.g., *Else v. Else*, 5 Neb. App. 319, 558 N.W.2d 594 (1997), but we find no hard and fast rule that prohibits the district court from using other times as the appropriate date for valuation purposes so long as the value selected bears "a rational relationship to the property to be divided upon dissolution." *Davidson v. Davidson*, 254 Neb. 656, 668, 578 N.W.2d 848, 858 (1998). We believe the date of valuation of marital assets is subject to an abuse of discretion standard, and we approach this assigned error accordingly.

Dawn also argues that the trial court erred in deducting a real estate commission for the sale of the property. We agree, although on other grounds than those argued by Dawn. She suggests that because the parties did not use a real estate agent in the sale of their previous home, they will not need one to sell the Beaver Lake property. This record does not reflect any evidence concerning a potential sale or the amount or percentage of real estate commission.

The issue of whether a real estate commission for sale of the family residence should be uniformly deducted from the valuation of that residence does not appear to have heretofore been directly addressed by the Nebraska appellate courts. However, we see this as a matter of whether the evidence supports the trial court's decision regarding real estate commissions. In order to be credited for the deductibility of a real estate commission, the proponent must adduce evidence that a sale of the real estate is imminent or would occur in the foreseeable future, as well as evidence of the amount of the commission for the property in question. Failure to adduce such evidence would dictate a finding that there should be no deduction for the real estate commission. Obviously, the parties may stipulate to such facts and thereby avoid the necessity of formal presentation of evidence. As previously stated, in the instant case, there is neither evidence nor stipulation in support of a deduction of a real estate commission.

We therefore find that the trial court abused its discretion in making a deduction for a real estate commission. We accord-

ingly modify the trial court's finding, in regard to the Beaver Lake house and property, to provide that Dawn's lien against that property is $49,750.

Dawn also argues that the trial court erred in its disposition of the parties' personal property. The parties present sharply differing versions of the value, source, and disposition of many of these items. In such a case, we give weight to the fact that the trial court, which heard the testimony below, believed one witness over another. See *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995). It is clear that the evidentiary presentation of the parties does not allow division with the sort of surgical precision that Dawn now demands in her brief. We are convinced that given the record, the district court assigned assets to the marital estate and divided such assets in a way which fairly recognizes each party's claims. Given the state of the record and the applicable law, we cannot say that the trial court abused its discretion in that division.

Dawn next complains that the trial court erred by failing to take her indebtedness into account in its division of the marital estate. Specifically, Dawn appears to suggest that the court erred in failing to order Victor to pay part of the debts she incurred while attending law school, or to otherwise factor that debt into the overall property division.

On our de novo review of the record before us, we cannot conclude that the district court abused its discretion in the distribution of that debt. Dawn takes with her all of the benefits of her law school education, and equity requires that she take with her those debts directly related to obtaining that degree. We recognize that the parties dispute whether, and in what portion, the excess of loans over tuition was spent on joint marital interests or solely in support of Dawn's education. On this point, as in all others where the testimony of the parties is in dispute, we consider, and give weight to, the fact that the trial judge heard and observed both witnesses and accepted one version of the facts rather than another. See *Jirkovsky v. Jirkovsky, supra*. We accordingly find no abuse of discretion in the trial court's allocation of responsibility for the entire student loan debt to Dawn.

## VICTOR'S CROSS-APPEAL: EDUCATION EXPENSES

On cross-appeal, Victor argues that the trial court erred in failing to compensate him for the financial support he claims to have provided Dawn while she was obtaining her undergraduate and law degrees. Dawn has not submitted a reply brief addressing this argument.

The question of whether an advanced degree is marital property has never been resolved in Nebraska. In *Rubin v. Rubin*, 230 Neb. 919, 434 N.W.2d 329 (1989), the wife asserted that the trial court erred in failing to value her husband's education and medical license and to award her a portion of the value of those items. There, the Supreme Court, citing Annot., 4 A.L.R. 4th 1294 (1981 & Supp. 1988), noted that the great majority of the states which have considered the matter have concluded that a professional license is not marital property capable of being divided between two separating spouses. However, the court went on to hold that it need not resolve the matter in that case, because the wife had failed to adduce sufficient evidence permitting valuation of the husband's medical license and because the court had considered the earnings of the husband. Thus, the Supreme Court concluded that the trial court did not abuse its discretion in failing to make a monetary award to the wife.

The instant case does not contain sufficient evidence to permit the trial court to make such a valuation of Dawn's law degree. We accordingly conclude that as in *Rubin*, the trial court did not abuse its discretion on this record by failing to award Victor a monetary award relating to Dawn's law degree.

Victor also argues that he is entitled to some form of alimony, either traditional or "reimbursement," for his purported contributions toward Dawn's acquisition of her law degree. We hold that the equities of the case militate against such an award. Nebraska courts have awarded alimony to a wife who interrupted her education and career in order to help support her husband while he obtained his medical degree, who subsequently assisted him in establishing his practice in psychiatry, and who was substantially dependent upon him for support. See *Ritchie v. Ritchie*, 226 Neb. 623, 413 N.W.2d 635 (1987). Similarly, in *Kosnopfl v. Kosnopfl*, 206 Neb. 524, 293 N.W.2d 854 (1980), the trial court properly took into consideration the fact that the wife

had contributed her entire earnings to the marriage while her husband obtained his bachelor's and master's degrees which, the court found, had enabled him to gain an earning capacity much greater than that of the wife, as well as a position with greater prospects for increase.

The instant case, however, does not fit those parameters. Victor does not claim to have interrupted his career to put Dawn through law school, nor has he shown that he deferred any advancement of that career on her behalf. The parties sharply dispute whether Victor made any personal sacrifices to help put Dawn through school, a situation where, once again, we defer to the trial court's evaluation of their respective testimony. Victor does not, and cannot, claim to have funded her education, in light of the fact that she left the marriage obligated to repay more than $63,000 in student loans. Obviously, Victor did nothing to assist Dawn in establishing her career once she graduated from law school. Having weighed those factors upon our de novo review of the record, we conclude that the trial court did not abuse its discretion in failing to award alimony to Victor.

For the reasons set forth above, we find that the trial court did not abuse its discretion in failing to compensate Victor for the cost of Dawn's law school education.

## CONCLUSION

For the reasons set forth above, the judgment of the trial court is affirmed as modified.

AFFIRMED AS MODIFIED.