Chrissie Elaine Wiech, appellee, v.
Craig Allen Wiech, appellant.
___ N.W.2d ___

Filed November 3, 2015.    No. A-14-747.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion.

2. **Divorce: Property Division: Appeal and Error.** The date upon which a marital estate is valued should be rationally related to the property composing the marital estate, and the date of valuation is reviewed for an abuse of the trial court's discretion.

3. **Divorce: Property Division: Equity.** The purpose of assigning a date of valuation in a decree is to ensure that the marital estate is equitably divided.

4. ____: ____: ____. A specific, consistent, and enforceable date of valuation permits the trial court to allocate all the assets of the marital estate in an equitable and fair manner.

5. **Divorce: Property Division.** The marital estate includes property accumulated and acquired during the marriage through the joint efforts of the parties.

6. **Property Division: Employer and Employee: Wages.** Where an employee is entitled by agreement to a cash payout of unused vacation, sick, and compensatory time, those benefits constitute property.

7. ____: ____: ____. Where a collective bargaining agreement provides for a cash payment of unused vacation, sick, and compensatory time, such payment is deferred compensation to be included in the marital estate.

8. **Wages: Words and Phrases.** Deferred compensation is defined as compensation which is earned in exchange for services rendered.

9. **Divorce: Property Division.** Deferred compensation is property for purposes of determining the marital estate.

10. **Divorce: Property Division: Pensions.** The marital estate includes any pension plans, retirement plans, annuities, and other deferred compensation benefits owned by either party, whether vested or not vested.

11. **Divorce: Property Division.** Under Neb. Rev. Stat. § 42-365 (Reissue 2008), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.

12. ____: ____. The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case.

13. **Divorce: Property Division: Real Estate: Sales.** In an action for dissolution of marriage, in order to be credited for the deductibility of a real estate commission, the proponent must adduce evidence that a sale of the real estate is imminent or would occur in the foreseeable future, as well as evidence of the amount of the commission for the property in question.

14. **Property Division: Taxes.** Income tax liability incurred during the marriage is one of the accepted costs of producing marital income, and thus, income tax liability should generally be treated as a marital debt.

15. **Property Division.** Any income accumulated during a marriage is considered a marital asset.

Appeal from the District Court for Sarpy County: William B. Zastera, Judge. Affirmed in part, and in part reversed and remanded with directions.

Aimee S. Melton and A. Bree Robbins, of Reagan, Melton & Delaney, L.L.P., for appellant.

Michael N. Schirber, of Schirber & Wagner, L.L.P., for appellee.

Irwin, Inbody, and Riedmann, Judges.

Riedmann, Judge.

## INTRODUCTION

Craig Allen Wiech appeals the order of the Sarpy County District Court which dissolved his marriage to Chrissie Elaine Wiech and divided the marital estate. On appeal, he challenges the district court's classification, valuation, and division of the marital property. For the reasons explained below, we affirm in part, and in part reverse and remand with directions.

## BACKGROUND

Craig and Chrissie were married on May 26, 2008. They separated on September 28, 2013, and Chrissie filed a complaint for dissolution of marriage on October 2. There were no children born during the marriage.

Trial was held in May 2014 to determine, inter alia, the extent and value of the marital estate and the division of marital property. The evidence presented will be described in more detail as needed in the analysis below.

The district court entered the decree on August 5, 2014. Each party received a vehicle subject to its associated lien: Chrissie received a 2009 Mazda, and Craig received a 2010 Harley-Davidson motorcycle. Chrissie was awarded the marital residence, subject to its mortgage, as well as most of the parties' personal property. Each party was assigned various credit card debts. Chrissie received "a lump sum of $48,009.81" from Craig's pension, an amount "representing the marital portion of the pension in the amount of $42,398.88, and $5,610.93 of [Craig's] accumulated sick and vacation time as evidenced on Trial Exhibit No. 11." Craig timely appeals to this court.

## ASSIGNMENTS OF ERROR

Craig assigns, summarized, that the district court erred in its classification, valuation, and division of the marital property.

## STANDARD OF REVIEW

[1] In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. *Rommers v. Rommers*, 22 Neb. App. 606, 858 N.W.2d 607 (2014).

## ANALYSIS

On appeal, Craig generally argues that the district court erred in its classification, valuation, and division of various assets owned by the parties. We address his specific arguments individually below.

*Valuation Date of Craig's Pension.*

Craig asserts that the district court erred in valuing his pension as of March 6, 2014, a date he claims has no rational relationship to the date of separation or dissolution. We find no abuse of discretion in the utilization of this date.

[2-4] As a general principle, the date upon which a marital estate is valued should be rationally related to the property composing the marital estate, and the date of valuation is reviewed for an abuse of the trial court's discretion. *Pohlmann v. Pohlmann*, 20 Neb. App. 290, 824 N.W.2d 63 (2012). The purpose of assigning a date of valuation in a decree is to ensure that the marital estate is equitably divided. *Id*. Because the valuation and distribution of a particular asset rarely takes place in a vacuum, a specific, consistent, and enforceable date of valuation permits the trial court to allocate all the assets of the marital estate in an equitable and fair manner. See *Blaine v. Blaine*, 275 Neb. 87, 744 N.W.2d 444 (2008).

In the present case, Craig challenges the decision to value his pension as of March 2014 instead of September 2013, the time of the parties' separation. We note that other assets of

the marital estate were valued as of early 2014 as well. For example, evidence was received depicting the balance of the mortgage on the marital residence as of May 1. Likewise, the liens on the parties' two vehicles were valued as of March 31. The values of Craig's accrued sick and vacation leave were established as of May 3. The dissolution trial was held on May 23, and the March 2014 pension statement was the statement closest to trial. Consequently, we find no abuse of discretion in valuing Craig's pension as of March 2014.

*Sick, Vacation, and Compensatory Time.*

The district court awarded Chrissie a portion of the value of the sick, vacation, and compensatory (comp) time Craig had accrued through his employment during the marriage. We note that although the decree states sick and vacation time are being awarded, the calculation of $5,610.93 awarded to Chrissie necessarily includes one-half of Craig's accumulated comp time. Craig asserts that the district court erred in considering his accrued leave to be a marital asset. We find no abuse of discretion in the classification of his unused sick, vacation, and comp time as marital property. We further determine that the district court erroneously awarded Chrissie the value of the entire marital portion of Craig's accrued sick leave, instead of an equitable share, and we therefore reverse, and remand for division. See *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006) (stating general rule to award spouse one-third to one-half of marital estate, polestar being fairness and reasonableness as determined by facts of each case).

Craig is employed as a police officer with the city of Bellevue, Nebraska. The collective bargaining agreement governing Craig's employment relationship provides that upon separation of his employment, Craig shall be promptly paid all accumulated vacation leave computed on the basis of his regular pay as of his last day of employment. Similarly, the agreement provides that employees who retire with at least 5 years of service shall receive a cash payout for accumulated

sick leave, but such payment shall be one-half of the accumulated sick leave not to exceed 960 hours at the regular pay at the time of retirement. The portion of the agreement contained in our record does not indicate whether unused comp time is convertible to cash but Craig testified that if he were to retire and had comp time available, he would be entitled to a payout.

Whether an employee's accrued sick leave, vacation leave, and comp time is considered marital property is an issue of first impression in Nebraska. Courts in other jurisdictions are split on this issue. Compare, *Schober v. Schober*, 692 P.2d 267 (Alaska 1984) (unused leave, portion of which was convertible to cash on yearly basis, is marital asset); *In re Marriage of Cardona and Castro*, 316 P.3d 626 (Colo. 2014) (where employee spouse has enforceable right to be paid for accrued sick or vacation leave, such leave earned during marriage is marital property); *Dye v. Dye*, 17 So. 3d 1278 (Fla. App. 2009) (cash value of unused sick and vacation leave is marital asset subject to equitable distribution); *Lesko v Lesko*, 184 Mich. App. 395, 457 N.W.2d 695 (1990) (banked leave days are divisible marital asset); *Marriage of Williams*, 84 Wash. App. 263, 927 P.2d 679 (1996) (same), with *In re Marriage of Abrell*, 236 Ill. 2d 249, 923 N.E.2d 791, 337 Ill. Dec. 940 (2010) (accrued vacation and sick days are not marital property subject to distribution in dissolution of marriage action); *Akers v. Akers*, 729 N.E.2d 1029 (Ind. App. 2000) (reversing trial court's treatment of unused sick days as marital asset); *Bratcher v. Bratcher*, 26 S.W.3d 797 (Ky. App. 2000) (accrued holiday and vacation entitlement is not marital property); *Thomasian v. Thomasian*, 79 Md. App. 188, 556 A.2d 675 (1989) (same).

[5] In Nebraska, the marital estate includes property accumulated and acquired during the marriage through the joint efforts of the parties. *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998). Thus, to determine whether accrued but unused sick, vacation, and comp time is part of the

marital estate, we must first determine whether these benefits are property.

[6-9] "Property" is defined as "1. The right to possess, use, and enjoy a determinate thing (either a tract of land or a chattel); the right of ownership . . . . 2. Any external thing over which the rights of possession, use, and enjoyment are exercised . . . ." Black's Law Dictionary 1335-36 (9th ed. 2009). Where, as here, an employee is entitled by agreement to a cash payout of unused vacation, sick, and comp time that employee has a "right" to those payments, and therefore they constitute property. We further determine that where a collective bargaining agreement provides for a cash payment of these benefits, such payment is deferred compensation to be included in the marital estate. See, *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013) (classifying vacation pay as additional wages for services performed); *Wadkins v. Lecuona*, 274 Neb. 352, 740 N.W.2d 34 (2007) (identifying comp time payments as deferred compensation). Deferred compensation is defined as compensation which is earned in exchange for services rendered. *Livingston v. Metropolitan Util. Dist.*, 269 Neb. 301, 692 N.W.2d 475 (2005). Pursuant to the collective bargaining agreement, Craig earned sick and vacation time based upon the length of service provided. If he does not use his sick or vacation time, he is allowed to cash it out pursuant to the formula contained in the agreement. According to Craig's testimony, he is also allowed to cash out his comp time upon retirement. Thus, the sick, vacation, and comp time pay are deferred compensation. Deferred compensation is property for purposes of determining the marital estate. Neb. Rev. Stat. § 42-366(8) (Reissue 2008). See, also, *Davidson v. Davidson, supra*.

As the Supreme Court of Colorado observed when addressing this issue, an employee who has an enforceable right to be paid for accrued sick or vacation leave receives compensation when the employee either uses the time for a permissible purpose or is paid the value of the accrued leave. See *In re Marriage of Cardona and Castro*, 316 P.3d 626 (Colo. 2014).

In this situation, sick or vacation days accrued by an employee are his property because they are, in effect, a debt due to him as part of the compensation he has earned for work he has already performed. See *In re Marriage of Abrell*, 236 Ill. 2d 249, 923 N.E.2d 791, 337 Ill. Dec. 940 (2010) (Garman, J., dissenting; Kilbride and Burke, JJ., join).

[10] The fact that the amount of sick, vacation, and comp time is subject to reduction based upon Craig's use of it is of no consequence. Under § 42-366(8), the marital estate, for purposes of the division of property at the time of dissolution, includes any pension plans, retirement plans, annuities, and other deferred compensation benefits owned by either party, *whether vested or not vested*.

Prior to the adoption of § 42-366(8), the Nebraska Supreme Court declined to include pension interests as marital assets because of the problems inherent in determining their value and the contingent nature of the interest. See *Witcig v. Witcig*, 206 Neb. 307, 292 N.W.2d 788 (1980). However, with the enactment of § 42-366(8), pensions, as well as other deferred compensation benefits, are to be included in the marital estate. See, *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998) (including unvested employee stock options and stock retention shares as marital property when accumulated and acquired during marriage); *Simon v. Simon*, 17 Neb. App. 834, 770 N.W.2d 683 (2009) (holding husband's early retirement incentives that resulted from employment during marriage as marital property subject to equitable distribution in divorce).

Therefore, the fact that the amount of unused sick, vacation, and comp time available for payment may change does not prevent it from being included in the marital estate where the unused portion was accumulated and acquired during the marriage. Accordingly, we find that the district court did not abuse its discretion in classifying Craig's accrued and unused sick, vacation, and comp time as property for purposes of valuing and dividing the marital estate.

The district court determined that as of May 2014, Craig had 292.5 hours of unused sick leave. As provided in the collective bargaining agreement, he is entitled to the value of one-half of those hours upon his retirement. Thus, the value of 146.25 hours at his present rate of pay ($31.79 per hour) equals $4,649.28. This amount represents the value of the marital portion of Craig's accrued sick leave. The district court, however, awarded this entire amount to Chrissie when she is entitled only to an equitable share. We therefore reverse, and remand to the district court to equitably divide the marital portion of Craig's sick leave. See *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006).

The district court found that Craig's unused vacation hours accrued during the marriage equaled 35.75 hours. Thus, the total value of the marital portion of Craig's vacation time is $1,136.49. Chrissie was awarded one-half of this amount, and we affirm.

Finally, the district court awarded Chrissie one-half of its calculated value of Craig's accrued comp time for a total of $393.41, and we affirm. In sum, the district court did not abuse its discretion in classifying the sick, vacation, and comp time that Craig accrued during the marriage as marital property. However, the court erred in its division of the property. We affirm the award of $568.24 to Chrissie for her share of Craig's vacation leave, and we affirm the award of $393.41 for her share of Craig's comp time. We direct the district court on remand to equitably divide the marital portion of Craig's unused sick leave.

*Equity in Marital Home.*

Craig and Chrissie built the marital residence during the marriage. The district court awarded the home and its mortgage to Chrissie, but it did not assign any values to the property or the associated debt. Craig asserts that the failure to value this asset was erroneous, and we agree.

[11,12] Under Neb. Rev. Stat. § 42-365 (Reissue 2008), the equitable division of property is a three-step process. The first

step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Despain v. Despain*, 290 Neb. 32, 858 N.W.2d 566 (2015). The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Id*.

[13] Chrissie opined that the value of the home was approximately $186,503, which is equal to the 2014 value established by the county assessor. The balance of the mortgage as of May 1, 2014, was $181,730.73. Chrissie claims the home has negative equity after subtracting from the assessed value the mortgage balance and any anticipated real estate commission in the event of a sale. Any future real estate commission should not be considered when determining the value of the marital residence, however. In *Walker v. Walker*, 9 Neb. App. 694, 618 N.W.2d 465 (2000), this court said that to be credited for the deductibility of a real estate commission, the proponent must adduce evidence that a sale of the real estate is imminent or would occur in the foreseeable future, as well as evidence of the amount of the commission for the property in question. We held that failure to adduce such evidence would dictate a finding that there should be no deduction for the real estate commission. *Id*.

There was no evidence presented in this case that Chrissie was planning to sell the home. She merely testified as to her opinion of the amount of a real estate commission in the event of a sale. We therefore reverse this portion of the award and remand the matter to the district court to assign a value to this asset, calculated as the difference between the value of the residence and the mortgage balance, and award the property to either Craig or Chrissie.

*2013 Tax Liabilities.*

Craig contends that the parties' 2013 tax liabilities should have been treated as a marital debt and divided equitably between him and Chrissie. We agree.

[14] Because income tax liability incurred during the marriage is one of the accepted costs of producing marital income, income tax liability should generally be treated as a marital debt. *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000). In *Meints*, the Supreme Court required that the husband's tax liability amount be treated as marital debt even for returns the parties filed separately, but any statutory penalties assessed for delinquent filing is treated as a nonmarital debt solely attributable to the filing spouse. The court cautioned, however, that equity may not demand the same result if credible evidence establishes that the delinquent taxpaying spouse spent significant funds on nonmarital pursuits. *Id.*

In the present case, Chrissie argues that because Craig claimed at least 10 exemptions during the marriage so as to minimize his tax withholdings, she should not be responsible for any portion of his tax liability. While Craig may have attempted to minimize his tax withholdings during the marriage, the additional income he retained benefited both parties during the marriage, and there is no evidence that he spent significant funds on nonmarital pursuits. Craig requested an extension on his 2013 tax return, and thus, at the time trial was held in May 2014, he had not yet filed his taxes. There was no evidence presented at trial that he incurred any statutory penalties for delinquent filing. Craig testified that as calculated, he would owe at least $6,000 for his tax debt, and likely more. Chrissie owed federal income taxes of $800 for 2013. We find that the district court abused its discretion in failing to equitably divide the $6,800 in tax liabilities between the parties. Accordingly, we reverse, and remand to the trial court to equitably divide and assign the tax liabilities.

*Premarital Debt.*

[15] Craig asserts that Chrissie's portion of the marital estate should be offset by the premarital debt she brought into the marriage which was reduced during the marriage using marital funds. Chrissie acknowledges that she brought premarital debt, specifically a bankruptcy obligation, into the marriage and that the balance was reduced during the marriage. But she claims that she used "[her] income" to pay down the debt, not marital assets, and that thus, her share of the marital estate should not be reduced. Any income accumulated during the marriage, however, is considered a marital asset. See *Harris v. Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001). Therefore, even though Chrissie earned a higher income than Craig during the marriage, the funds used to pay down Chrissie's premarital debt are marital assets.

In *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004), the wife had approximately $12,000 in student loan debt at the time of the marriage, and the loans were paid off with marital funds during the marriage. When dissolving the parties' marriage and dividing marital property, the trial court failed to account for the entirety of the loans that the wife brought into the marriage. On appeal, the Nebraska Supreme Court determined that the wife's portion of the marital estate should have been reduced by the total student loan debt that she brought into the marriage because that debt was paid off with marital assets. *Id*. The court, however, found no abuse of discretion under the totality of the circumstances because the marital estate totaled well over $1 million, and the alleged mistake constituted less than one-half of 1 percent of this total. *Id*.

In the present case, the trial court failed to account for Chrissie's premarital debt. She testified that she was required to pay $1,200 per month toward her bankruptcy obligation for 60 months beginning in April or May 2007. Accordingly, Chrissie made payments for approximately 47 months during the marriage, for a total of $56,400. Considering the total

value of the marital estate here, this amount constitutes a significant portion of the estate; it was therefore an abuse of discretion to fail to offset this amount from Chrissie's share. Likewise, Craig admitted that he brought debt into the marriage of $3,549.95, and thus, it was plain error for the district court not to offset this amount from Craig's share of the marital estate. We therefore remand the matter to the district court to equitably divide the marital estate and offset Chrissie's portion by $56,400 and Craig's portion by $3,549.95.

## CONCLUSION

Upon our de novo review of the record, we affirm the district court's decision to value Craig's pension as of March 2014 and classify his sick, vacation, and comp time as a marital asset. However, we conclude that Chrissie was erroneously awarded the entire marital portion of Craig's sick leave. We also conclude that the court abused its discretion in failing to calculate and assign the equity in the marital residence, divide the 2013 tax liabilities, and offset the parties' premarital debt. As a result of these errors, we remand the matter to the district court to equitably divide Craig's sick leave, calculate the equity in the marital home and assign it to one of the parties, equitably divide the tax liabilities, and offset each party's premarital debt from his or her share of the marital estate.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.