SANDRA KAY SHOCKLEY, APPELLEE AND CROSS-APPELLANT,
V. ALLEN JOSEPH SHOCKLEY, APPELLANT AND CROSS-APPELLEE.

560 N.W.2d 777

Filed March 7, 1997.   No. S-95-106.

Michael T. Levy for appellant.

Susan A. Anderson, of Anderson Law Office, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and LUTHER, D.J.

WHITE, C.J.

Allen Joseph Shockley (Husband) appeals and Sandra Kay Shockley (Wife) cross-appeals the district court of Douglas County's valuation and division of the marital estate in these divorce proceedings. Since we find that the court did indeed err in valuing certain assets of the marital estate, we affirm as modified.

The parties were married on September 15, 1984, and a divorce decree was entered on November 15, 1994. Husband and Wife stipulated that their assets were to be valued as of the date of filing—September 16, 1992.

Both parties worked for U S West before and during the marriage. Husband worked for 5.5 years of the parties' marriage and then took early retirement on March 1, 1990, after completing 26.5833 years of service and earning approximately $39,000 per year. He retired on an incentive plan which added 5 years to his age and 5 years to his years of service (5+5 enhancement) to compute his lump-sum settlement. Husband

placed the proceeds of this settlement into his SCI IRA No. AYR-R09001-A5 account. These were the only funds in that account through the date of filing; the account had a value of $235,254.07 as of that date.

Prior to the marriage, Husband withdrew $14,227 in stock distributions from his employee stock option plan (ESOP). He testified that that amount was placed in two accounts—his Schwab One No. 8120-4039 and his SCI No. OIR-277750-A5. Husband also testified that he took distribution of the remainder of his ESOP and his payroll stock option plan (PAYSOP) at his retirement and rolled that stock into his Schwab One IRA No. 8120-44201.

Wife continued to work at U S West throughout these proceedings and was earning approximately $41,000 per year as of the date of filing. On that date, Wife had completed 25.1667 years of service, 8.0833 years of that employment during her marriage. She did not withdraw anything from her ESOP or PAYSOP before the date of filing.

The trial court found that the marital estate had a value of $193,339.80 and allocated $86,929 to Wife and $106,410.80 to Husband. The trial court ordered Husband to pay Wife $9,740.90 to equalize the distribution and $1,000 toward Wife's attorney fees.

On appeal and as summarized, Husband argues that the district court erred in (1) valuing both parties' pensions, (2) failing to deduct premarital assets from two of Husband's investment accounts, (3) valuing a 1964 Ford Falcon awarded to Husband, and (4) ordering Husband to pay $9,740.90 to equalize the estate and $1,000 toward Wife's attorney fees. On cross-appeal, Wife alleges that the district court erred in (1) valuing Husband's pension, (2) valuing one of Husband's IRA accounts, and (3) failing to award Wife an adequate cash settlement.

The division of property in dissolution cases is a matter initially entrusted to the discretion of the trial judge. On appeal, such matters will be reviewed de novo on the record and affirmed in the absence of an abuse of discretion. See, *Priest v. Priest, ante* p. 76, 554 N.W.2d 792 (1996); *Venter v. Venter*, 249 Neb. 712, 545 N.W.2d 431 (1996); *Ritz v. Ritz*, 229 Neb. 859, 429 N.W.2d 707 (1988).

Because appeals in domestic relations matters are heard de novo on the record, an appellate court is empowered to enter the order which should have been made as reflected by the record. *Pendleton v. Pendleton*, 242 Neb. 675, 496 N.W.2d 499 (1993). In a dissolution of marriage case, an award of attorney fees is discretionary, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Venter v. Venter, supra.*

The parties' first assignments of error involve the district court's valuation of their respective pensions. We find that the court did err in its calculation of the marital portion of Husband's pension.

We note at the outset that the marital estate includes only that portion of the pension which is earned during the marriage. *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). Contributions to pensions before marriage or after dissolution are not assets of the marital estate. *Priest v. Priest, supra.* A trial court may exercise discretion in valuing pension rights and dividing such rights between the parties. *Hildebrand v. Hildebrand*, 239 Neb. 605, 477 N.W.2d 1 (1991); *Sonntag v. Sonntag*, 219 Neb. 583, 365 N.W.2d 411 (1985).

In this case, the trial court found that Wife's pension with U S West had a total lump-sum value of $18,118.92 as of the date of filing and found the marital portion to be 32.12 percent (Wife's 8.0833 years of service during the marriage, divided by her 25.1667 total years of service). Husband argues that the trial court should have instead determined the marital portion by assuming that Wife would retire after 30 years of service and included those future years of service in finding the marital portion. We have long held that contributions to pensions before marriage or after dissolution are not assets of the marital estate and are not subject to a division. *Priest v. Priest, supra.* The trial court did not err in determining the marital portion of Wife's pension using the present value of that pension and Wife's actual number of years of service as of the date of filing.

The trial court did, however, err in valuing Husband's pension. Husband took early retirement in a lump sum during the course of the marriage. U S West offered a 5+5 enhancement for eligible employees in which the company added 5 years to the

number of years of service and 5 years to the employee's age in determining the pension. Husband was eligible for early retirement only because the 5+5 enhancement increased his years of service from 26.5833 years to 31.5833 years. Wife had to give up her survivor annuity in order for Husband to be eligible for this program. The lump sum was placed in an investment account, SCI IRA No. AYR-R09001-A5, and had a value of $235,254.07 as of the date of filing.

The district court determined the marital portion of Husband's pension by utilizing a two-step procedure. First, the court determined the marital percentage of 20.7 percent without including the 5+5 enhancement (Husband's preenhancement 5.5 years of service during marriage, divided by his 26.5833 years of employment). The court multiplied that percentage by the total value of the investment account and found the marital portion to be $48,700. Second, the court determined the value of the buyout incentives. It did so by multiplying the total value of the investment account by a marital percentage of 33.25 percent (Husband's 10.5 years of service as determined by U S West and including the 5-year enhancement, divided by Husband's 31.5833 years of employment including the 5-year enhancement), yielding $78,000. The court then subtracted the $48,700 amount to leave $29,300, multiplied that by the 20.7 percent marital percentage, and found the resulting $5,947.80 to be the enhanced value of Husband's pension due to buyout incentives. In other words, instead of using the marital percentage derived either from including the 5+5 enhancement (33.25 percent) or from excluding the enhancement (20.7 percent), the court determined that the marital portion of Husband's buyout incentive was approximately one-fifth of the difference between the marital portion including the 5+5 enhancement and the marital portion excluding the 5+5 enhancement.

Both parties dispute the methodology utilized by the trial court in determining the marital portion of Husband's pension. Wife argues that because U S West accorded Husband 5 additional years of employment during the course of the marriage and used that additional 5 years to determine his lump-sum award, the trial court should have utilized the 33.25 percentage, which included the enhancement, to determine the marital por-

tion. Husband, on the other hand, argues that the only pension value that should be assigned to him is the $48,700 because Wife contributed nothing to the early retirement incentives and his actual years of employment did not include the 5+5 enhancement.

We agree with Wife's position in this case. In determining Husband's lump-sum settlement, U S West accorded him an additional 5 years of employment with the company as a part of the 5+5 enhancement. That 5 years should have been included by the trial court in figuring the marital portion of the pension because Husband was given that enhancement during the course of the marriage. Husband's enhanced years of service during the marriage (10.5), divided by his enhanced total years of employment (31.5833), yields a marital portion of 33.25 percent, or $78,222. The marital portion of Husband's pension, including the buyout incentives, should be increased by $23,574.20.

The parties next allege that the trial court also erred in valuing the marital portion of Husband's ESOP and PAYSOP. We agree.

Husband had withdrawn part of his ESOP prior to the parties' marriage, withdrew the rest of his ESOP and his PAYSOP during the course of the marriage, and each time rolled over the stock into investment accounts. The court found that three accounts represented the stock withdrawn during the marriage and determined the marital portion of 20.7 percent by dividing the number of years of Husband's employment during the marriage (5.5) by the number of total years of employment (26.5833). (The 5+5 enhancement did not extend to Husband's ESOP and PAYSOP.) The court then found the marital portion of the Schwab One IRA No. 8120-44201 worth $80,809.17 to be $16,719.42, the Schwab One No. 8120-4039 worth $49,849.96 to be $10,313.96, and the SCI No. OIR-277750-A5 worth $8,235.50 to be $1,703.92.

Husband argues that the premarital withdrawal and rollover of stock should be valued at $14,227, that this amount should be subtracted from the total value of the last two accounts, and that the marital portion of those accounts should actually total $9,078.70 rather than $12,017.88. Wife argues that Husband does not provide sufficient proof that the premarital assets can

be traced to these two accounts and that it is his burden to do so. Wife also argues that in the event that the court finds the last two accounts to be premarital property, then the court should find those two accounts to be solely premarital property and should find that the entire $80,809.17 in the first account is marital property.

The parties' joint tax return for the year they were married lists $14,227 as Husband's premarital stock. Husband testified that this amount represented the stock withdrawn from his .ESOP prior to the parties' marriage and that it was placed in two investment accounts—Schwab One No. 8120-4039 and SCI No. OIR-277750-A5. Husband also testified that the first account reflected only amounts withdrawn from his ESOP and PAYSOP during the marriage and that the SCI No. OIR-277750-A5 account was opened in December 1992, and was solely composed of stock that had been withdrawn prior to the marriage.

The burden of proof to show the source of all funds claimed as premarital is on the party claiming that those funds are premarital. *Frost v. Frost*, 227 Neb. 414, 418 N.W.2d 220 (1988). Where there is nothing on the record to show the source of premarital funds, they should be considered part of the marital estate. See *id*. We find that Husband has met his burden of proof in demonstrating that the $14,227 represents the premarital withdrawal from his ESOP and in showing that those funds were placed in the above Schwab One and SCI accounts. Accordingly, the marital portion (20.7 percent) of these two accounts awarded to Husband should be reduced to $9,078.70.

Wife argues that the third account, Schwab One IRA No. 8120-44201, should be included in the marital estate in its entirety. We disagree. The marital estate includes only property accumulated and acquired during the marriage through the joint efforts of the parties. *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). While the Schwab One IRA account does represent the full amount of the withdrawal from Husband's ESOP and PAYSOP at the time of retirement, the stock in these accounts was accumulated throughout the duration of Husband's employment. As a result, the marital estate would include only that portion earned during the marriage, and the trial court properly determined that percentage.

In Husband's third assignment of error, he disputes the trial court's valuation of the 1964 Ford Falcon awarded him. He argues that the court improperly valued the Falcon at $4,000, rather than determining its value to be $2,700—the amount for which Husband testified that his daughter sold another 1964 Ford Falcon. The trial court valued all of the vehicles in this case by averaging the wholesale and retail values of the vehicles as listed in the September through December 1992 "N.A.D.A." manual. We find that the trial court did not abuse its discretion in so valuing the vehicle. Thus, Husband's assignment of error in this regard is without merit.

Both parties also assign as error the cash award ordered by the trial court. Husband and Wife argue that the amount of the cash award was incorrect because the court erred in its valuation of the marital estate.

We have held on numerous occasions that in cases where the growth of the marital estate cannot be attributed to one party more than to another, the trial court may divide the estate equally. *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995); *Kullbom v. Kullbom*, 209 Neb. 145, 306 N.W.2d 844 (1981). In cases such as this, where the evidence clearly demonstrates that both parties contributed equally to the acquisition of the marital estate, the trial court did not err in awarding each party an equal portion of the marital estate. However, as noted above, the trial court erred in its valuation of the marital estate. Because the correct valuation of Husband's pension and ESOP and PAYSOP increases his share of the marital estate to $127,046.12, he must pay Wife $20,058.56, rather than $9,740.90, to equalize the marital estate as ordered by the trial court.

Finally, we reach the question of attorney fees. Husband argues that the trial court erred in ordering him to pay $1,000 toward Wife's attorney fees. We disagree. On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. *Venter v. Venter*, 249 Neb. 712, 545 N.W.2d 431 (1996). We find no abuse of discretion in this award.

Wife has also filed a motion with this court requesting an award of attorney fees for the services of her counsel on appeal.

The award of attorney fees for services of counsel on appeal depends on multiple factors that include the nature of the case, the amount of property divided and alimony awarded, the earning capacity of the parties, the services performed and results obtained, the length of time required for preparation and presentation of the case, customary charges of the bar, and the general equities of the case. *Priest v. Priest, ante* p. 76, 554 N.W.2d 792 (1996). After considering each of these factors, we conclude that each party shall pay his or her own attorney fees for services rendered in pursuing this appeal.

Since we find that the trial court erred in its valuation of Husband's pension and his ESOP and PAYSOP, we affirm the district court's order as modified by this opinion.

AFFIRMED AS MODIFIED.