770 N.W.2d 683 (2009)
17 Neb. App. 834
Cheryl L. SIMON, appellant,
v.
Richard SIMON, appellee.
No. A-08-1292.
Court of Appeals of Nebraska.
August 11, 2009.
*685 Michael B. Lustgarten, Omaha, and Justin A. Roberts, Senior Certified Law Student, of Lustgarten & Roberts, P.C., L.L.O., for appellant.
Benjamin M. Belmont, Jason C. Demman, Omaha, and Jessica Levine, Senior Certified Law Student, of Brodkey, Cuddigan, Peebles & Belmont, L.L.P., for appellee.
IRWIN, SIEVERS, and CASSEL, Judges.
SIEVERS, Judge.
After 30 years of marriage, Cheryl L. Simon and Richard Simon were divorced by a decree of dissolution entered by the district court for Douglas County on August 1, 2008, that was followed by an order ruling on a motion for new trial and motion to alter or amend on November 4, from which Cheryl files this timely appeal. The principal issue is the proper treatment of Richard's "Early Leaving Incentive Program" (ELIP) moneys that he is entitled to receive as a result of taking early retirement from the Omaha Public Schools (OPS).

FACTUAL AND PROCEDURAL BACKGROUND
At the time of the trial, Cheryl was 51 years of age and Richard was 54 years of age. Richard had three income sources: from OPS in the amount of $58,800 per year for his work as a mathematics teacher; from working for a family business, which was involved in the installation of underground sprinkler systems; and from teaching on an occasional basis at the University of Nebraska at Omaha and a community college. Richard has a bachelor's degree and a master's degree and has taught mathematics for 30 years at Omaha Northwest High School. Richard is eligible to retire from OPS and was set to retire shortly after the trial, effective September 1, 2008. Richard expected to receive his first OPS pension payment on October 1. At the time of his retirement, Richard and Cheryl will divide on an equal basis his OPS pension of $2,940 per month. Richard testified that after his retirement, he will continue to work part time at Brownell-Talbot School, earning $32,000 per year. He testified that he is no longer going to work in the family business, where he has worked since 1987, earning between $4,500 and $7,800 per year.
*686 The parties raised three children, all of whom are now over the age of majority. Cheryl also worked throughout the marriage for various employers as a licensed practical nurse. She last worked providing home health care services, but the exact date such employment ceased is not in the record. Cheryl suffers from diabetes as well as a genetic condition, pseudoxanthoma elasticum, which manifested itself in the 4 years preceding trial and caused her to become nearly blind. Cheryl testified that she cannot drive or read, cannot see anyone's face, and can see only the color yellow and "a few shapes." Cheryl testified that the condition is getting progressively worse and that ultimately she will be completely blind. At the time of trial, Cheryl's income sources were $350 per month temporary alimony plus Social Security disability benefits of $1,239 per month.
The trial court divided the parties' debts and assets equally. The parties did not accumulate a marital estate of consequence after considering debt. Neither party complains about any aspect of the property division, other than discussed below, and the net value of the marital estate would not impact our resolution of the issues presented on appeal. Thus, it is not necessary to detail the fine points of the property division.
The ELIP from OPS provides a benefit of $1,162.12 per month to Richard for 83 months for a total of $96,455.96. The payments will begin September 15, 2008, up to his 62d birthday, when he will become eligible to begin drawing Social Security benefits, if he so elects. The trial court awarded Richard all of the ELIP payments.
The trial court awarded Cheryl alimony of $600 per month, which is reduced to $1 per month upon Richard's retirement, at which point she would begin receiving her agreed-upon 50 percent of his OPS pension, or $1,470 per month. The net effect is that Cheryl will receive the $600 payment from Richard for 1 month.

ASSIGNMENTS OF ERROR
Cheryl assigns two errors: The trial court erred (1) in failing to equally divide the ELIP moneys and (2) in its alimony award to Cheryl.

STANDARD OF REVIEW
[1,2] In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding division of property, alimony, and attorney fees. Longo v. Longo, 266 Neb. 171, 663 N.W.2d 604 (2003).

ANAYLSIS

Award of OPS ELIP Benefits.
[3] The ELIP payments that were awarded in their entirety to Richard begin September 15, 2008, and continue through July 15, 2015, at the rate of $1,162.12 per month for a total of $96,455.96. Cheryl argues that she should receive half of such payments, whereas Richard argues that such are future "income" to which he is solely entitled.
The only documentation concerning the ELIP payments in the record is Richard's application to OPS for such. While the application refers to "eligibility requirements" for ELIP payments, and Richard, via his signature on the application, acknowledges his understanding of such, the actual eligibility requirements are not in the record. However, Richard admitted in his testimony that he is getting the ELIP payments "because of [his] work for OPS during the course of the marriage" and *687 that such is a "perk" resulting from his work for OPSall of which occurred during the marriage. OPS approved his ELIP application on June 3, 2008. However, Richard did not disclose the existence of the ELIP benefits until the day of trialJune 16.
[4] Cheryl notes that all assets and debts were divided essentially 50-50. She concedes that other than the ELIP moneys, all of the marital assets and debts were divided in a fair and equitable manner. However, she asserts that the award of the ELIP moneys solely to Richard is unquestionably an abuse of discretion. The trial court did not provide a rationale for the award of the ELIP moneys to Richard. Cheryl's argument for a division of the ELIP payments is based on the general rule that all property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to the general rule. Heald v. Heald, 259 Neb. 604, 611 N.W.2d 598 (2000). The exceptions that come immediately to mind are property acquired during the course of the marriage by one party through either gift or inheritance. See Heald, supra. And property owned by one party before the marriage is set off to such party if it is traceable, unless the other party has significantly cared for the property during the marriage. See Olson v. Olson, 13 Neb. App. 365, 693 N.W.2d 572 (2005). None of these exceptions to the general rule are involved in this case.
Richard argues the ELIP payments are "an early retirement incentive plan as a replacement for post-separation wages and therefore is separate property or income from wages, not to be included in the equitable division of the marital estate." Brief for appellee at 12.
In arguing for the notion that the ELIP moneys are excluded from the marital estate, Richard begins with the general concept found in Davidson v. Davidson, 254 Neb. 656, 578 N.W.2d 848 (1998), that the marital estate should only include property created by the marital partnership and that the ELIP benefits do not meet this criteria. However, Richard ignores the holding of Davidson, that to the extent that the husband's "unvested employee stock options and stock retention shares were accumulated and acquired during the marriage, they were accumulated and acquired through the joint efforts of the parties." 254 Neb. at 663, 578 N.W.2d at 855.
The Davidson court then turned to the question of when stock options and retention shares "are accumulated and acquired." Id. The Davidson court said that most courts recognize that employee stock options may be granted for "past, present, or future services, or some combination thereof." Id. (citing In re Marriage of Hug, 154 Cal.App.3d 780, 201 Cal.Rptr. 676 (1984)). There can be no doubt from the evidence that the ELIP benefits were completely earned and granted for past performancein this case, Richard's 30 years of work for OPS, all of which time he was married to Cheryl. Moreover, Richard's choosing to terminate his employment with OPS is the precondition to his obtaining such benefits. Thus, in no sense can the ELIP payments be deemed a reward for future services, because his OPS employment has ended. Finally, we observe that the permutations commented upon by the Davidson court regarding the valuation and acquisition dates of the husband's stock options and retention shares are simply not present here. Corporate stock is subject to the vagaries of the marketplace and the economy, whereas Richard is receiving a fixed amount, $96,455.96 paid in 83 equal installments, and such is not affected by future events *688 as stock options or retention shares would be.
[5] Davidson, supra, clearly reaffirms the basic "time rule" that assets acquired during the marriage are marital property. Thus, in the instant case, to the extent that the ELIP benefits are deemed "property," the right to such was undisputedly acquired during the marriage. And none of the aforementioned exceptions to exclude property from the marital estate apply. The record is clear that the ELIP benefits are a direct result of Richard's work for OPS over the 30-year course of the marriage. Thus, we have little hesitancy in concluding that if the ELIP benefits are considered property, such should have been included in the marital estate. Neb.Rev.Stat. § 42-366(8) (Reissue 2008) provides substantial guidance on the question of whether the ELIP benefits are "property." The statute provides, "The court shall include as part of the marital estate, for purposes of the division of property at the time of dissolution, any pension plans, retirement plans, annuities, and other deferred compensation benefits owned by either party, whether vested or not vested." § 42-366(8).
The statute clearly sweeps quite broadly in requiring retirement or deferred compensation plans to be included in the division of property. On the basis of the statutory language alone, it is difficult to reach any conclusion other than that the ELIP benefits should have been divided as marital property, given that it clearly is part and parcel of Richard's "retirement benefits package" that he accumulated while married to Cheryl.
[6] Our decision in Bandy v. Bandy, 17 Neb.App. 97, 756 N.W.2d 751 (2008), is instructive in the sense that it discusses a pension that we determined was outside of the broad language of § 42-366(8). In Bandy, the husband sustained an on-the-job injury that qualified him for workers' compensation benefits as well as a disability pension from the city of Omaha, his employer when he was injured. On appeal, the wife argued that the trial court erred in excluding the disability pension from the property division because the court found the pension was a nonmarital asset. We affirmed the trial judge's decision awarding the disability pension solely to the husband, reasoning that the husband's disability pension was distinct from any retirement benefits he may receive from the city and the disability pension appeared to be compensation for his loss of earning capacity, noting the evidence that he had not been able to obtain and hold regular employment since the injury. In this case, the ELIP benefits do not compensate Richard for a future inability to workeven though the benefits are payable in the future, nor do such benefits pay him for future work.
In Longo v. Longo, 266 Neb. 171, 663 N.W.2d 604 (2003), the court considered the division of a nonvested military pension in a dissolution action. The Longo court's observations about such seem analogous to Richard's retirement package, including the ELIP payments. The Longo court stated as follows:
[Section] 42-366(8) logically requires that a nonvested military pension be treated as marital property in a dissolution proceeding. While military personnel do not make monetary investments in a pension plan, they invest time and personal sacrifice in order to qualify for a nondisability military pension. Spouses of such personnel share in this investment to the extent that the duration of the marriage coincides with the period of military service. As one court has noted, the future retirement pay of a career military service member who is not yet eligible to retire "is a contractual *689 right, subject to a contingency, and is a form of property." Jackson v. Jackson, 656 So.2d 875, 877 (Ala.Civ.App.1995). Because § 42-366(8) specifically requires the inclusion of retirement benefits "whether vested or not vested" in the marital estate, we conclude that the district court did not err in awarding [the wife] a share of [the husband's] future nondisability military pension entitlement, payable only if and when such benefits become payable to [the husband].
266 Neb. at 179, 663 N.W.2d at 610.
We see little difference between the "investment" a teacher and his or her spouse make in a teaching career and what a military service member and his or her spouse make in a military career.
[7] With the foregoing "background" law in place, which seems to compel the conclusion that the trial court erred in its treatment of the ELIP moneys, we turn to Richard's argument that the trial court award should be upheld. Richard asserts the following: "Whether early retirement incentive plans are marital property is an issue of first impression in Nebraska." Brief for appellee at 13. That is not exactly true, and we note that neither party cites us to Shockley v. Shockley, 251 Neb. 896, 560 N.W.2d 777 (1997). Shockley is more mathematically complicated because while the husband worked for U S West for a total of 26.5833 years, only 5.5 years were during the marriage before he took early retirement on March 1, 1990. He retired on an incentive plan, which added 5 years to his age and 5 years to his years of service to compute the lump-sum settlement he received when he retired. The husband in Shockley argued, in the words of the Supreme Court, that "Wife contributed nothing to the early retirement incentives and his actual years of employment did not include the 5+5 enhancement." 251 Neb. at 901, 560 N.W.2d at 781. However, the Supreme Court agreed with the wife's argument that the trial court should have added the 5 extra years from the early retirement incentive to his 5.5 years of employment in order to get the percentage attributable to marriage. Thus, 5 years were added to the 5.5 years worked during the marriage, as well as to the total actually worked, producing 31.5833 total years, divided by 10.5 marital years, to produce a figure of 33.25 percent. Therefore, the court found, "The marital portion of Husband's pension, including the buyout incentives, should be increased by $23,574.20." Id. Accordingly, while Shockley is more nuanced than the instant situation, it clearly stands for the proposition that early retirement incentives that result from employment during the marriage are included in the marital estate. Although § 42-366(8) was then effective, the Shockley court did not cite to it; nonetheless, we suggest the result in Shockley is not only driven by equity and reasonableness, but by the unambiguous language of that statute.
Richard also cites decisions from Virginia, Ohio, and Pennsylvania in support of his argument that the ELIP benefits were properly excluded from the marital estate. We do not dissect or attempt to distinguish those cases, because § 42-366(8) and the Nebraska authority we have cited above is determinative. Therefore, we hold that the trial court abused its discretion in awarding all of the ELIP benefits solely to Richard, because such should have been included in the property division as marital property.
Perhaps because Richard did not disclose the ELIP until the day of trial, the details of this program in our record are a bit sketchy. We do not know for certain that the payments are taxable, nor do we know if a qualified domestic relations order *690 is needed to have Cheryl receive one-half of the ELIP moneys, which we determine is proper and reasonable, as part of the property division. Therefore, we remand the cause to the district court for further proceedings to determine if a qualified domestic relations order is needed and, if so, for the execution and approval of such. The trial court shall award Cheryl a percentage of the payments that have not yet been maderemembering that such were to start on August 15, 2008so that in the end, she receives that percentage of the remaining payments, once the payments to her begin, which will equal 50 percent of the total ELIP benefit of $96,455.96 over the timespan of the then remaining payments. In this way, Richard will not be obligated to pay Cheryl out of pocket for her share of the ELIP benefits he has already received, but she will end up receiving a total of $48,227.98one-half of the total ELIP payments.

Award of Alimony to Cheryl.
[8] We now turn to the issue of the alimony award to Cheryl. It is apparent that this case is appropriate for an award of alimony, given the 30 years of marriage and Cheryl's unfortunate circumstances. The trial court awarded her $600 a month beginning on the first day of the month following the entry of the decree, which occurred on August 1, 2008, but such payment was ordered reduced to $1 a month when Cheryl begins "receiving her 50% portion of [Richard's OPS] Pension." However, in the November 4 order on the motion to alter or amend, the court amended the alimony provision
in that at such time as [Richard] retires from his employment with [OPS], he shall file ... an Affidavit, with back up documentation, setting forth his retirement start date and the Clerk will then adjust its records to show the reduction in [Richard's] alimony obligation from $600.00 per month to $1.00 per month.
Another provision of the November 4, 2008, order provides that until Cheryl receives her 50 percent of the monthly OPS pension payment directly from OPS ($1,470 at the time of trial), Richard will be obligated to pay her 50 percent of what he receives. Richard testified that his effective retirement date is September 1, 2008, and that he will get the first payment on October 1meaning the $600 per month will be paid only 1 month, September 2008, and thereafter alimony will be $1 per month. The alimony is to run for 60 months, or until Richard's death or Cheryl's remarriage, whichever occurs first.
Cheryl asks that we order the alimony extended for 10 years and not reduce it below $600 per month or only "slightly reduce the obligation." Brief for appellant at 20.
[9] The ultimate test for determining the correctness of the alimony award is reasonableness as determined by the facts of each case. Baratta v. Baratta, 245 Neb. 103, 511 N.W.2d 104 (1994). Neb.Rev. Stat. § 42-365 (Reissue 2008) provides in part:
When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.
*691 Cheryl's education is limited to certification for licensed practical nursing, and she is no longer able to work in that capacity because of her near complete blindness, which the evidence shows will only worsen. She cannot read, drive a car, distinguish faces, colors, or most shapes. Her opportunities for employment are clearly severely limited. Her monthly income is composed of Social Security benefits of $1,239 and taxable income of $1,470 from her share of Richard's OPS retirement. Thus, her income is $2,709 pretax per month. Additionally, she will get cost of living increases from both OPS and from Social Security. Thus, at this time, Cheryl's pretax yearly income is $32,508, and by a rough estimate, the ELIP benefit will increase her annual income by $7,000 once she begins receiving such.
Richard's projected yearly income as the alimony and property division currently stand is $32,000 from Brownell-Talbot School, $17,640 from OPS for his pension, and $13,945.44 in ELIP benefits for a total of $63,585.44 annually. However, given our modification concerning the ELIP benefit, his income will be closer to $56,000. The ELIP benefit terminates when Richard turns 62 and he becomes eligible to draw Social Security. Although the evidence was not complete on the point, it is implicit that Richard's Social Security benefits at age 62 will approximate the ELIP benefits he is receiving until that time.
Given the length of the marriage, Cheryl's severe disability, Richard's educational level and residual earning capacity despite his retirement from OPS, and the parties' relatively young ages at 51 for Cheryl and 54 for Richard, we find that the alimony term of a mere 60 months is significantly inadequate and was an abuse of discretion. Therefore, the term of alimony should be 120 months. The monthly amount awarded by the trial court is de minimus because of Richard's agreement to arrange for payment of one-half of his OPS pension to Cheryl, but such was allowed for modification purposes in the event of a material change of circumstances. However, we find that such opportunity should not be limited to such a brief timeframe, given the parties' situations as summarized above. That said, we decline to modify the amount of the alimony as it is reasonable and appropriate considering the income and resources available to each party and our treatment of the ELIP moneys set forth above. Thus, we affirm the alimony award in all respects, except that the term thereof shall be 120 months.

CONCLUSION
For the reasons discussed above, the ELIP benefits should have been considered marital property and included in the property division. Thus, the trial court abused its discretion by awarding all of the ELIP benefits to Richard. Second, given the circumstances of this case, the term of Richard's alimony obligation is hereby extended from 60 months to 120 months. In all other respects, we affirm the trial court's decision.
Affirmed as modified, and cause remanded with directions.