IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

WOLFE V. WOLFE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SEAN WOLFE, APPELLANT,

V.

RACHEL WOLFE, APPELLEE.

Filed March 3, 2015.    No. A-14-335.

Appeal from the District Court for Douglas County: LEIGH ANN RETELSDORF, Judge. Affirmed in part, and in part reversed and remanded with directions.

Matthew Stuart Higgins and Brandie M. Fowler, of Higgins Law, for appellant.

Donald A. Roberts and Britt H. Dudzinski, of Lustgarten & Roberts, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and INBODY and PIRTLE, Judges.

INBODY, Judge.

## I. INTRODUCTION

Sean Wolfe appeals from the decree dissolving his marriage to Rachel Wolfe. He contends that the district court erred in, inter alia, granting sole legal and physical custody of the parties' two children to Rachel, in the award of child support and expenses, in the division of the marital estate, and in failing to accept into evidence the report of the court's expert witness.

## II. STATEMENT OF FACTS

Sean and Rachel were married on September 6, 1997. The couple have two children: Gwen, who was born in 2001, and Helena, who was born in 2005.

- 1 -

On September 3, 2010, Sean filed a complaint for dissolution of marriage, in which he sought custody of the children, child support from Rachel, and asked for an equitable division of the parties' property. A temporary order was entered on May 24, 2011 granting Sean sole legal custody of the minor children with the parties sharing joint physical custody. Sean was ordered to pay $350 per month for child support retroactively commencing on January 1, 2011.

In October 2011, Rachel requested that the court appoint Cynthia S. Topf, Ph.D., a certified child psychologist, as an expert pursuant to Neb. Rev. Stat. § 27-706(1) (Reissue 2008). The court granted Rachel's request in December and directed Topf to prepare psychological assessments of the parties and minor children and to perform a child custody evaluation for the court.

The matter came on for trial on April 26, 2012. The parties began the trial, but at some point during the day they informed the court that they had reached an agreement; however, they did not put this agreement on the record, nor was an agreement ever signed by Sean and Rachel.

On September 14, 2012, Sean filed a motion for entry of a dissolution decree. Sean asserted that his counsel drafted a proposed decree in June and forwarded it to Rachel's counsel, but that Rachel had refused to endorse the decree. Attached to Sean's motion for entry of decree is an e-mail to Rachel's counsel and a draft of the decree, but the decree was not signed by the court or the parties. Rachel responded that the parties had engaged in settlement discussions and exchanged proposed decrees and revisions, and reached a settlement agreement but no record of it was created and Rachel no longer agreed with the proposals and wished to proceed to trial. On October 5, a hearing was held on this motion. At the hearing, no evidence was adduced. The conversation between the court and the attorneys indicate that a trial had been scheduled and started on April 26, but at some point during the day, the parties indicated to the court that a settlement agreement had been reached. However, this settlement agreement was never entered into the record nor was it ever signed by Rachel. Rachel's attorney stated that a proposed decree drafted by Sean's attorney reflects the agreement that was reached by the parties on April 26, but Rachel did not want to sign the agreement that was made because she changed her mind. These comments by Rachel's counsel regarding the parties' agreement were unsworn and Rachel did not confirm or deny the accuracy of her counsel's comments. The motion for entry of decree was denied by the court by order entered on October 22.

Pursuant to an earlier motion filed by Sean, on January 3, 2013, the court entered a temporary order awarding sole legal and primary physical custody of the minor children to Sean; awarding Rachel parenting time; terminating Sean's child support obligation to Rachel as of May 1, 2012; and ordering Rachel to pay child support of $747 per month beginning December 1, 2012.

Trial in this case was held on February 1 and concluded on April 25, 2013. Sean called Topf as a witness at trial. Topf testified that she completed a child custody evaluation in which she recommended that Sean be awarded physical custody. She found that the visitation schedule the parties had been using, which was a three-two-two-three-day split, was chaotic and dysfunctional for the children, and she suggested bigger blocks of time for visitation. She also suggested one parent have the children primarily during the school year and the other parent have custody in the summer. This opinion was based on the children's need for stability.

Topf testified that she had received reports of three incidents of domestic violence by Rachel against Sean, and two of which were in the children's presence. Rachel had also left the children alone in the middle of the night to go shopping on a Black Friday. Rachel also reported that she missed some parenting time because she was seeing her boyfriend and Sean refused to let her make up that time. Topf also noted that Rachel exhibited less control over the children.

Topf reported two incidents in which the younger child, Helena, had gotten a kitchen knife and pulled it on her sister, Gwen, and the children were not able to wake up Rachel for help. Topf also testified that both children felt abandoned by their mother at times when Rachel chose to spend time with her boyfriend rather than with the children.

Topf said the psychological testing showed that Rachel may become aggressive and act out, especially when under stress. Testing did not show that Sean had any mental disorder, although he admitted to being depressed and taking medication, which appeared to be helping. In addition to Topf's testimony, Sean offered into evidence the written assessment completed by Topf. Rachel's counsel objected, arguing that the report was hearsay because it was a statement made by a witness out of court. The court sustained the objection and did not receive Topf's report into evidence. The court later took in-chambers testimony of Gwen over Sean's objection.

Sean testified that Rachel had missed parenting time with her children because she had been on vacation. He stated that Rachel had slept through an incident in which Helena pulled a knife on her older sister. Sean stated that between August 2010 and January 2011, when the children were in his care, Rachel missed significant chunks of parenting time. Sean testified that the children's behavior was distressing; Gwen began sucking her thumb again and Helena had potty training accidents, the girls fought with each other and Helena had tantrums. The girls' behavior improved when they went to a divorce class with other children. However, the behaviors escalated again in February or March 2011 after the parties shared custody of the girls. The joint custody arrangement continued until April 2012. Sean stated that the girls' performance at school decreased during this period. Sean stated that his attempts to co-parent with Rachel were rebuffed when Rachel did not respond to messages or stated that she had her own rules.

At the conclusion of the trial, Sean testified that he wanted sole custody of the children with visitation for Rachel. However, he indicated that the schedule of one week on/one week off or three days with one parent and three days with the other was not in the children's best interests and he would rather not have sole custody under such an arrangement. Sean further testified that if the court planned to adopt such a schedule, it would be more appropriate for Rachel to have physical custody and Sean would have visitation every other weekend and one evening each week. If the court awarded Rachel custody during the school year, Sean asked for visitation for the entire summer. Sean told the court that sole custody for Rachel would be in the children's best interests rather than joint custody because he had "lived that already."

Rachel testified that she felt joint custody would be workable, but based on Sean's testimony, she would ask for sole legal custody.

The court entered a decree of dissolution on November 8, 2013. Based on the testimony of the parties, the court found it was in the best interests of the children that Rachel be awarded sole legal custody and primary physical possession of the children, subject to Sean's rights of visitation. The parties were ordered to abide by the terms and conditions of the partial parenting

plan and additional terms and conditions set forth in the dissolution decree. The court specifically set forth in the decree that the court considered both parties' testimony in making the custody determination.

The court ordered Sean to pay child support of $1,018 per month for two children and $766 per month when there was one minor child retroactive commencing May 1, 2013. Rachel was to pay the first $480 per child per year for unreimbursed medical expenses for the children, and after that threshold was reached, Sean was ordered to pay 58 percent and Rachel to pay 42 percent of all remaining uninsured medical, dental, orthodontia, and optical expenses for the children. Sean was directed to be responsible for outstanding debts to Nebraska Furniture Mart, Best Buy, Home Depot, and Capitol One. Rachel was directed to be responsible for the outstanding debt to Chase credit card.

The court also determined that Rachel was indebted to Sean for retroactive child support of $5,229. The court stated that it took that amount into account in the division of the parties' retirement accounts. Sean was given credit for $13,538 as interest reimbursement pursuant to the court's temporary order which provided that Sean was to be given credit for all interest paid on the mortgage during the pendency of the proceedings. Sean was given credit for children's expenses of $3,425; a Reno trip reimbursement of $1,984; and one-half of home repairs of $225. The total of those amounts was taken into account in the division of the parties' retirement accounts. The court also credited Sean $15,860 and credited Rachel $10,000 for inheritances.

The court ordered that the parties' pension accounts with the Methodist Health System should be divided equally by a Qualified Domestic Relations Order (QDRO). Sean had a 403(B) account and two Edward Jones accounts that totaled $48,357 as of the date of filing. Rachel had a 403(B) account and two Edward Jones accounts that totaled $18,736 at the time of filing. In order to equalize the division of assets and debts, Rachel was awarded $14,943 from Sean's retirement accounts by QDRO. Sean has timely appealed to this court.

## IV. ASSIGNMENTS OF ERROR

Sean contends that the district court erred in (1) denying his motion for entry of the decree of dissolution; (2) failing to receive the child custody evaluation prepared by Topf; (3) determining that it would be in the best interests of the minor children for sole legal and physical custody to be awarded to Rachel; (4) erring in various respects regarding child support and the children's expenses including (a) ordering Sean to pay retroactive child support, (b) ordering Rachel's child support arrearage be paid to Sean through a retirement account, (c) failing to award Sean expenses incurred on behalf of the children through July 2013, and (d) allocating incorrect percentages to each party's contributions to the expenses of the children; and (5) errors relating the marital assets and debts including (a) ordering Sean to be responsible for a Capital One credit card, (b) awarding Sean the debts associated with Nebraska Furniture Mart and Best Buy while failing to take those debts into account in its final recapitulation, (c) improperly crediting Rachel for a $10,000 inheritance, (d) and dividing other assets and debts via Sean's retirement account.

## V. STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. *Rommers v. Rommers*, 22 Neb. App. 606, ___ N.W.2d ___ (2014).

## VI. ANALYSIS

### 1. DENIAL OF MOTION FOR ENTRY OF DECREE

Sean argues that the district court erred in denying his September 2012 motion to compel entry of the decree of dissolution agreed to by the parties. Sean argues that the district court's refusal to compel Rachel to honor the parties' agreement is an abuse of discretion.

Sean contends that prior to the completion of the parties' first scheduled trial date of April 26, 2012, the parties had reached an agreement as to all of the issues in their case but did not put the agreement on the record, and Sean's counsel drafted a proposed decree and forwarded it to Rachel's counsel, but Rachel had refused to endorse the decree. Rachel contends that the parties had engaged in settlement discussions but that no record was created of any settlement agreement. Rachel acknowledged that the parties had exchanged proposed decrees, but Rachel no longer agreed with the proposals and wished to proceed to trial. The record before this court does not include any evidence that any proposed decree or settlement agreement was agreed to, or signed by, the parties, nor was it signed by the court. We note that there were unsworn comments made by Rachel's counsel regarding the parties' agreement, but Rachel did not confirm or deny the accuracy of her counsel's comments.

We find that the settlement discussions between the parties were in the form of negotiations. Pursuant to Rule 408 of the Nebraska Rules of Evidence, "Evidence of conduct or statements made in compromise negotiations is . . . not admissible." Neb. Rev. Stat. § 27-408 (Reissue 2008). See *Hike v. State Department of Roads*, 288 Neb. 60, 846 N.W.2d 205 (2014). The district court did not abuse its discretion by failing to enter a decree where no evidence was presented that the decree had been agreed upon by the parties. Thus, we find no error in the court's denial of Sean's motion for entry of decree.

### 2. FAILURE TO ADMIT EXPERT'S REPORT INTO EVIDENCE

Sean argues that the district court erred in sustaining Rachel's hearsay objection to Topf's written report and failing to receive the written report into evidence. The court declined to receive Topf's written report into evidence, sustaining Rachel's hearsay objection. Sean contends that Topf's written report should have been received into evidence, among other reasons, because the report provided the foundation for Topf's opinion. Further, Sean argues that the court's error in failing to receive Topf's written report into evidence was compounded when the court elected to interview Gwen in chambers, over Sean's objection, because information contained in the report was relevant in determining whether an interview with Gwen was necessary and may have been relevant to the weight to be given to Gwen's testimony.

However, even assuming without deciding that Topf's report should have been admitted into evidence, an erroneous exclusion of evidence is reversible only if the complaining litigant was prejudiced by the exclusion of such evidence. *Sturzenegger v. Father Flanagan's Boy's Home*, 276 Neb. 327, 754 N.W.2d 406 (2008).

Sean called Topf as a witness at trial and she was available for examination by Sean regarding the contents of her report. Because Sean could have offered testimony during his direct examination of Topf regarding additional contents of Topf's report he wanted the court to consider, he cannot show prejudice from the court's refusal to admit Topf's report into evidence. This assignment of error is without merit.

### 3. CUSTODY

Sean argues that the district court abused its discretion in determining that it was in the best interests of the minor children for sole legal and physical custody to be awarded to Rachel.

When custody of a minor child is an issue in a proceeding to dissolve the marriage of the child's parents, child custody is determined by parental fitness and the child's best interests. *Barth v. Barth*, *supra*. When both parents are found to be fit, the inquiry for the court is the best interests of the children. *Id*. In determining a child's best interests under Neb. Rev. Stat. § 42-364 (Cum. Supp. 2012), courts may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and the parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; and many other factors relevant to the general health, welfare, and well-being of the child. *Id*. Pursuant to Neb. Rev. Stat. § 43-2923(1) (Reissue 2008), the best interests of the child require a parenting arrangement and parenting plan or other court-ordered arrangement which provides for a child's safety, emotional growth, health, stability, and physical care and regular and continuous school attendance and progress for school-age children.

Both Sean and Rachel presented evidence concerning their own parenting strengths and the weaknesses of the other parent. The court made its decision based on the parties' testimony noting that Sean testified it would be in the children's best interests for one party to be awarded sole custody rather than joint custody and that if the court was considering joint custody, then Sean preferred that sole custody be awarded to Rachel.

Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Barth v. Barth*, 22 Neb. App. 241, 851 N.W.2d 104 (2014); citing *Marcovitz v. Rogers*, 267 Neb. 456, 675 N.W.2d 132 (2004). In fact, in contested custody cases, where material issues of fact are in great dispute, the standard of review and the amount of deference granted to the trial judge, who heard and observed the witnesses testify, are often dispositive of whether the trial court's determination is affirmed or reversed on appeal. *Id*.

The district court heard the testimony of the parties and the expert who completed a child custody evaluation. It determined that it was in the best interests of the children for sole custody to be placed in Rachel. Sean has not demonstrated that such decision was an abuse of discretion.

### 4. ERRORS RELATING TO CHILD SUPPORT AND EXPENSES

Sean assigns several errors relating to child support and expenses. He claims that the district court erred in (a) ordering him to pay retroactive child support commencing May 1, 2013; (b) ordering Rachel's child support arrearage to be paid to him through a retirement account; (c) in failing to award him expenses incurred on behalf of the minor children through July 2013; and (d) in allocating incorrect percentages to each parties' contributions to the children's expenses.

#### (a) Retroactive Child Support - Sean

Sean contends that the district court erred in ordering him to pay retroactive child support commencing May 1, 2013.

"Absent equities to the contrary, the modification of child support orders should be applied retroactively to the first day of the month following the filing date of the application for modification." *Theisen v. Theisen*, 14 Neb. App. 441, 451, 708 N.W.2d 847, 855 (2006); Accord *Lucero v. Lucero*, 16 Neb. App. 706, 750 N.W.2d 377 (2008). Whether a child support order should be retroactive is entrusted to the discretion of the trial court, and the court will affirm its decision absent an abuse of discretion. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013).

In the instant case, the November 2013 dissolution decree ordered Sean's child support to be retroactive to May 1, 2013, which was the first day of the month following the trial. However, Sean was awarded sole legal and primary physical custody of the minor children on January 3, 2013, which award was not modified until the court's dissolution decree. Since the court order changing custody was not modified until November, the district court abused its discretion in ordering Sean's child support to be retroactive to May 2013. We modify the court's order to provide that Sean's child support obligation was to commence on December 1, 2013.

#### (b) Child Support - Rachel

Sean also assigns as error that the district court erred in ordering Rachel's $5,229 child support arrearage be paid to Sean through a retirement account. He also contends that the amount of Rachel's child support arrearage was incorrectly calculated; however, he did not assign that as error. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party assigning the error. *Skyline Woods Homeowners Ass'n, Inc. v. Broekemeier*, 276 Neb. 792, 758 N.W.2d 376 (2008). Thus, we only address whether the court erred in ordering Rachel's child support arrearage to be paid to Sean through the division of the parties' retirement accounts.

We agree that Rachel's child support obligation to him should not have been taken into account in the division of the parties' retirement accounts. Thus, Rachel is ordered to pay Sean the $5,229 child support arrearage.

(c) Failing to Award Sean Expenses Incurred on Children's Behalf

Sean also asserts that the court erred in not giving him sufficient credit for expenses he paid for the children. The evidence adduced by Sean set forth that he paid the children's expenses prior to the entry of the temporary order in the amount of $1,557.76 and that he paid children's expenses for the 2012 calendar year amounting to $3,425.46. Thus the total amount of expenses at the time of trial was $4,983.22. The court credited Sean $3,425 for the children's expenses.

We interpret Sean's argument to be that the district court erred in failing to give him credit for the $1,557.76 in expenses he paid for the children prior to the entry of the temporary order. However, he has cited us to no authority that he is entitled to credit for these expenses prior to a court order being in effect. Therefore, we find that the district court did not err in failing to give him credit for expenses paid for the children prior to the entry of the temporary order.

(d) Division of Expenses

Sean also objects to the court's order requiring him to pay 58 percent of expenses and Rachel to pay 42 percent of the children's remaining uninsured medical, dental, orthodontia, and optical expenses after Rachel pays the first $480 per child per calendar year. Sean argues that the court's order differs slightly from the child support calculator which shows Sean's share to be 57.09 percent and Rachel's share to be 42.91 percent of the uninsured expenses.

We agree with Sean. Neb. Ct. R. § 4-221 provides that final child support should be rounded to the nearest dollar in all instances. On the child support worksheet, Rachel's share of child support is calculated at 42.91 percent, or $1,029.23, and Sean's share was listed at 57.09 percent, or $1,389.35. Rounding to the nearest percent, Sean shall be responsible for 57 percent of the children's expenses and Rachel shall be responsible for 43 percent of the children's expenses. The decree shall be modified to reflect that the parties' contributions to the children's expenses is 57 percent for Sean and 43 percent for Rachel.

5. ALLOCATION OF MARITAL PROPERTY

Sean argues that the district court erred in its determinations regarding martial property, specifically, ordering him to be responsible for the Capitol One credit card debt, failing to include the Best Buy and Nebraska Furniture Mart credit card debt in the court's final calculations, and granting Rachel a $10,000 credit for an inheritance.

The purpose of a property division is to distribute the marital assets equitably between the parties. Neb. Rev. Stat. § 42-365 (Reissue 2008). Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Finley-Swanson v. Swanson*, 20 Neb. App. 316, 823 N.W.2d 697 (2012). Section 42-365 indicates that in dividing the marital estate, a court should consider such things as the circumstances of the parties; the duration of the marriage; and the history of the contributions to the marriage by each party, including contributions to the care and education of the children and interruption of personal careers or educational opportunities.

### (a) Capitol One Credit Card

Although Sean assigned as error that the trial court erred in ordering him responsible for the Capital One credit card debt, he conceded at oral argument that he had agreed to be responsible for that debt. Therefore, we do not discuss this further.

### (b) Nebraska Furniture Mart and Best Buy Credit Cards

Sean also objects to the court's awarding him two debts, the Nebraska Furniture Mart and Best Buy credit cards, without taking those debts into account in its final recapitulation.

Sean testified that he had possession of the items that were purchased on the Best Buy and Nebraska Furniture Mart bills and that he was not asking that Rachel pay half of the Best Buy and Nebraska Furniture Mart bills. He is not arguing about being ordered to pay these debts; he merely wants the division of the marital estate to reflect that he has been ordered to shoulder the burden of these debts. We agree that he should receive credit for these debts that he was ordered to pay and the recapitulation by the court did not credit him for these debts. Thus, in the final recapitulation, Sean should receive credit for the $1,744.56 Best Buy debt and the $672.79 Nebraska Furniture Mart debt.

### (c) Rachel's Inheritance

Sean next argues that the district court improperly credited Rachel with a $10,000 inheritance. He claims that Rachel failed to meet her burden of proof.

Generally, all property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to the general rule. *Simon v. Simon*, 17 Neb. App. 834, 770 N.W.2d 683 (2009). The exceptions include property acquired during the course of the marriage by one party through either gift or inheritance. *Id*.

Rachel testified that she inherited $10,000 when her father died in 2008, the funds were placed in the parties' joint savings account, and some of the funds were used to purchase items for the home, and all of the money has been spent. Rachel's stepmother corroborated Rachel's testimony that Rachel's father died in 2008 and that Rachel received $10,000 from her father's estate.

Rachel testified as to her inheritance and her testimony was supported by her stepmother. The trial court found the evidence sufficient to support a finding that Rachel was entitled to a credit for her inheritance. We find no abuse of discretion in this determination.

### (d) Division of Martial Estate Via Retirement Accounts

Sean contends that the district court erred in dividing other assets and debts via his retirement account. However, before addressing this alleged error, since we have ascertained that certain errors occurred in calculating the division of the parties' marital estate, we have performed our own summary of the distribution of assets and debts between the parties. In reviewing the district court's recapitulation, we note plain error in the amounts listed for the parties' retirement accounts: although the decree awarded Sean his retirement accounts valued at $48,357 and awarded Rachel her retirement accounts valued at $18,726, the district court's recapitulation erroneously credited Sean's retirement account for the full $67,093 and did not credit Rachel any amount for her retirement accounts. We have corrected that error in our

recapitulation which is set forth below. Additionally, because we have ordered Rachel to pay Sean the retroactive child support award, we have also excluded that amount from our recapitulation.

| Item | Sean | Rachel |
|---|---|---|
| **Assets** | | |
| Family Residence | 50% | 50% |
| Motor Vehicles | $ 5,000 | $ 7,565 |
| Household goods | 4,865 | 1,260 |
| Retirement Accounts | 48,357 | 18,736 |
| Pensions | 50% | 50% |
| Assets Subtotal | $58,222 | $27,561 |
| **Debts** | | |
| Home Depot | (2,728) | 0 |
| Capital One | ( 4,180) | 0 |
| Best Buy | ( 1,743) | 0 |
| Nebraska Furniture Mart | ( 673) | 0 |
| Chase | 0 | ( 3,922) |
| **Assets Less Debts Subtotal** | $48,898 | $23,639 |
| Interest Credit | ( 13,538) | 0 |
| **Subtotal** | $35,460 | $23,639 |
| Reno Trip | ( 1,984) | 0 |
| Home Repair | ( 225) | 0 |
| Children's Expenses | ( 3,425) | 0 |
| Inheritances | ( 15,860) | ( 10,000) |
| Attorney Fees | ( 5,000) | 0 |
| **Subtotal** | $ 8,966 | $13,639 |
| Equalizing Payment | 2,336.50 | ( 2,336.50) |
| **TOTAL** | **$11,302.50** | **$11,302.50** |

Thus, based upon our recapitulation, Rachel owes Sean an equalizing payment of $2,336.50. Since Rachel also owes Sean for retroactive child support of $5,229, Sean is granted a judgment in the amount of $7,565.50.

### VI. CONCLUSION

In sum, we reject Sean's assigned errors that the district court erred in denying his motion for entry of the dissolution decree, in failing to receive the child custody evaluation by Topf, and in determining that in would be in the minor children's best interest for sole custody to be awarded to Rachel. We further affirm in part and in part reverse portions of the court's decree regarding child support, the children's expenses, and the division of the parties' marital assets and debts. Therefore, we affirm in part and in part reverse and remand with directions to modify the parties' dissolution decree consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.