IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


NASALIK V. NASALIK


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


SHIRLEY NASALIK, APPELLANT,

V.

WALTER NASALIK, APPELLEE.


Filed February 27, 2018.　　No. A-16-1029.


Appeal from the District Court for Lancaster County: JODI NELSON, Judge. Affirmed.

Laura A. Lowe, P.C., for appellant.

James H. Hoppe for appellee.


PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

Shirley Nasalik appeals the decree of dissolution of marriage entered by the district court for Lancaster County on September 30, 2016. She asserts the district court erred in determining the valuation and distribution of the parties' marital property. She also asserts the district court erred in finding Walter Nasalik's inheritance should be set aside as nonmarital property. For the reasons that follow, we affirm.

## II. BACKGROUND

Shirley and Walter were married on May 5, 1973. The parties purchased a home on Culwells Road in Lincoln in 1995 for approximately $240,000 and resided there until the time of their separation. Shirley is a retired certified public accountant and systems analyst. Walter is also retired, having worked in various financial and administrative positions for hospitals, medical offices, private businesses, and the federal government.

- 1 -

Shirley filed her complaint for dissolution on January 6, 2015. The parties separated and Walter moved from the Culwells Road residence on March 23. Walter removed his personal property and leased an apartment in the Overland Park, Kansas, area.

When the parties moved into the home, they brought personal property including furniture, tools, and many boxes of records. Over the years, the parties acquired additional property which accumulated in the home. Boxes of property and documents stacked up and the house became very cluttered.

Shirley expressed her desire to move from the home, because she had knee problems which made using the stairs difficult. She requested that Walter be responsible for one-half of the costs of upkeep and repairs on the home and proposed that the house be sold and the net sale proceeds be divided equally after the payment of closing costs, realtor fees, taxes, and other related costs.

She testified that she received treatment for hoarding behavior which began after she had cancer surgery in 2005. She considered herself to be "basically cured" of the hoarding behavior at the time of trial. The condition of the home and the contents which had accumulated within the home led to considerable expenditures for "decluttering" in anticipation of placing it on the market for sale.

The house was listed on the market in July 2015 for $369,000. When the listing expired, Shirley made repairs and updates to the home at the recommendation of the realtor. Walter testified that he had contributed $11,000 to $13,000 for cleaning and repair expenses incurred between March 2015 and December 2015 or January 2016. He discontinued payment when he noted there was limited progress being made. He stated that he did not object to paying for half of the legitimate expenses incurred for repairing the home. The house was listed again in February 2016 for $355,000 and the home remained on the market at the time of trial.

The parties maintained multiple bank accounts, all of which were held jointly, although some were designated as Shirley's or Walter's accounts. Some of these accounts were used to deposit social security checks or to pay credit cards in their respective names. Some accounts were set up to avoid FDIC insurance limits, and certain accounts were favored because they generated more interest. Walter handled the parties' finances during the marriage and frequently transferred money between accounts to equalize or replenish funds in the accounts.

During the marriage, Walter received an inheritance of $133,872.28 from his mother's estate. Walter's brother held the funds for about a year and then transferred them to one of the parties' joint accounts at Union Bank. Walter testified that he chose to deposit the inheritance into a joint account to maintain harmony in the marriage. Other facts relevant to Walter's inheritance will be discussed in further detail below.

Shortly before she filed her petition, Shirley moved money from the parties' joint accounts to new bank accounts at Union Bank which were held only in her name. On December 18, 2015, Shirley withdrew $320,000 from the Union Bank "main" account (UBT-6589), $145,000 from the Liberty National Bank "main" account (LNB-3727), and $60,000 from the Liberty National Bank designated as her social security account. She testified that she transferred the money to separate accounts to preserve it because she was concerned that Walter would dissipate the parties' assets through heavy alcohol consumption and frivolous or unnecessary purchases. On December 18, she also withdrew $2,000 in cash from the Union Bank "bill-paying" account, noting in the check register that these funds were withdrawn to "pay bills."

Trial took place on March 8 and April 27, 2016. The decree of dissolution of marriage was filed on September 30. The district court found that in December 2014, the parties removed money from various accounts and placed those funds in separate accounts in their individual names. Having found the parties divided much of the marital estate amongst themselves, the court took up the question of whether the division was done equitably and what equalization, if any, was needed. The court equalized the distribution of assets and liabilities. Equalization payments were ordered to account for the parties' cash assets, taxable and non-taxable IRA accounts, and vehicles. The court divided the parties' jewelry and firearms and found that items not specifically identified in the order should be retained by the party in possession, subject to any liens or encumbrances thereon.

The marital home was valued at the tax-assessed value of $318,000. Shirley was awarded all interest in the home and was ordered to pay half of the value to Walter as part of the final property equalization. The court found Shirley failed to meet her burden to show Walter's inheritance of $133,982.28 was marital.

Shirley timely appealed.

## III. ASSIGNMENTS OF ERROR

Shirley's assignments of error, consolidated and restated, are as follows: (1) The district court applied the incorrect burden of proof and erred in finding Walter's inheritance to be nonmarital property; (2) The district court erred in valuing the marital home, awarding the home to Shirley, and dividing the value in half, without taking into account the costs associated with decluttering, maintaining, and selling the home; (3) The district court erred in distributing certain monetary assets between the parties and erred in determining and applying the appropriate valuation date; (4) The district court erred in determining which firearms should be awarded to each party.

## IV. STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id.*

In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id.* However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

V. ANALYSIS

Under Nebraska's divorce statutes, "[t]he purpose of a property division is to distribute the marital assets equitably between the parties." Neb. Rev. Stat. § 42-365 (Reissue 2016). The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Bergmeier v. Bergmeier*, 296 Neb. 440, 894 N.W.2d 266 (2017). The Nebraska Supreme Court has stated that under § 42-365, the equitable division of property is a three-step process. *Osantowski v. Osantowski, supra.* The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. *Id.* The second step is to value the marital assets and marital liabilities of the parties. *Id.* The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 43-365. *Osantowski v. Osantowski, supra.*

Shirley asserts that the district court made several errors related to the equitable division of the parties' property.

1. WALTER'S INHERITANCE

Shirley asserts the district court erred in setting aside Walter's inheritance from his mother as nonmarital property.

Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. *Id.* Exceptions include property that the spouse acquired before the marriage, or by gift or inheritance. *Id.* Setting aside nonmarital property is simple if the spouse possesses the original asset, but can be problematic if the original asset no longer exists. *Id.* Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. *Id.* If the separate property remains segregated or is traceable into its product, commingling does not occur. *Id.* The burden of proof rests with the party claiming that the property is nonmarital. *Id.*

Shirley asserts the money was inextricably mixed with marital property, thus, it was commingled. As an introductory matter, the parties agree that the district court erred in placing the burden of proof on Shirley to show the inheritance was marital property. The burden of proof should have been placed upon Walter to show that the inheritance was nonmarital property, and we will review the record accordingly. See *id.*

On February 8, 2013, Walter received an inheritance totaling $133,872.28. That money was wire-transferred into the "main" joint Union Bank Account held by the parties, UBT-6589. The balance in this account before the transfer was $247,462.15. The transfer raised the balance of this account to $381,334.43. Walter testified that he deposited these funds into the joint account to promote marital harmony. The district court noted that, although Walter made several transfers from UBT-6589 to other jointly held accounts, the total assets of the parties never dropped below the amount of the inheritance. Both parties testified that their joint cash assets at the time of their separation was nearly $800,000.

The district court noted that the law does not require a complete segregation of inherited funds, nor does it require a dollar-by-dollar tracing. See, generally, *Marshall v. Marshall*, 298 Neb. 1, 902 N.W.2d 223 (2017); *Burcham v. Burcham*, 24 Neb. App. 323, 886 N.W.2d 536 (2016).

- 4 -

Ultimately the court concluded that Walter was entitled to a set aside of $133,872.28, the amount of the inherited funds.

The court correctly observed that the sum of the parties' joint accounts never dropped below the amount of Walter's inheritance, but this fact alone does not necessarily mean the funds were not commingled, and were therefore nonmarital. Shirley argues that Walter frequently moved money between the parties numerous jointly held accounts, using UBT-6589 as the "main" account. She argues that the frequent transfers into multiple accounts inextricably mixed nonmarital and marital funds, and therefore the whole of the inheritance should be treated as nonmarital.

The record shows that on February 8, 2013, an entry labeled "Deposit - Estate of Mary Nasalik" was recorded in Walter's check register for UBT-6589. Bank statements show an incoming wire transfer of $133,872.28 on that date. On July 30, Walter deposited a check for $225,000 into an existing joint account at Liberty National Bank, LNB-3727. The check cleared and the funds were withdrawn from UBT-6589 on August 2. The balance of the Liberty account at the time of the transfer was $183,689.30. The August 27, 2013, statement for LNB-3727 included a credit of $68.52 for interest, and the ending balance was $408,757.82.

LNB-3727 was used to pay the parties' taxes in September and December 2013 and June and September 2014, but otherwise withdrawals from the account were infrequent. The balance of the account did not drop below $408,757.82 until the parties began moving money in December 2014 in anticipation of their separation. The opening balance of the account in December 2014 was $419,533.70.

It would certainly have been tidier for tracing purposes for Walter to have transferred the inheritance amount to LNB-3727 separately, so that the funds could be clearly traced and his intent to keep the nonmarital funds separate was more clearly demonstrated. However, one could easily assume that the inheritance funds were included in the $225,000 transfer from UBT-6589 to LNB-3727, which occurred within 6 months after the initial wire transfer of the inheritance funds. Even though the inheritance funds were stored in joint accounts, there is a logical path to trace the funds after the initial wire transfer. Further, the amount continually held in LNB-3727 remained over the total value of the account at the time of the $225,000 transfer, until the parties acted in anticipation of their separation.

We find the inheritance funds were not "inextricably mixed" with the parties' other cash assets. Upon our review, we find Walter met the burden of proving the inheritance funds were nonmarital property. Although the district court placed the burden of proof on the incorrect party, the district court did not err in excluding $133,872.28 from the calculation of marital assets.

## 2. MARITAL HOME

Shirley alleges the district court made several errors regarding the award and valuation of the marital home and the distribution of costs and fees associated with the care, maintenance, and sale of the home.

### (a) Costs of Cleaning and Repairs

Shirley asserts that after Walter vacated the property she was left with the burden of cleaning and decluttering the home, as well as being tasked with the repair of the property. Further,

she asserts Walter contributed to the clutter in the home by failing to take all of his personal property. She asserts the district court erred in not ordering Walter to pay fifty percent of the decluttering expenses and repair costs due at the time of trial.

Walter and Shirley both testified that Walter removed the majority of his personal property when he moved from the home. He testified that everything left in the home was Shirley's property and that anything that remained in the home was hers to keep, or to throw away. He testified that Shirley was attached to certain personal property and he did not feel that he was able to effectively assist her in cleaning the home because he was not "allowed" to throw away things or destroy documents. He testified that he walked through the home on the day of trial and there were still 100-200 boxes stacked in the garage and throughout the house.

Upon our review of the record, the costs associated with cleaning and decluttering seem to stem primarily from the accumulation of personal belongings and clutter through Shirley's "hoarding behavior," and her continued residence in the home. Throughout 2015, Walter and Shirley shared the costs associated with decluttering the home. Walter testified that he provided $11,000 to $13,000 to Shirley as reimbursement for her decluttering and repair expenses, but he discontinued payment when he noticed that little improvement was being made. The district court determined that Walter was not entitled to repayment for his expenditures, nor was Shirley entitled to further payment for the costs and expenses associated with maintaining the home. The district court heard and observed the witnesses and upon our review of the record, we find the district court did not abuse its discretion in not ordering Walter to continue paying for additional costs associated with cleanup and repair of the home.

(b) Award of Marital Home

Shirley asserts the district court erred in awarding her the marital residence. She also asserts the district court should have ordered the home to be sold, and required each party to pay fifty percent of the taxes, upkeep, maintenance and repairs until the sale of the property.

It was clear that substantial work had gone into clearing the home of clutter and preparing it for sale, but this work took time and effort over the course of many months. During that time, Shirley received the benefit of continuing to reside in the home, while Walter found alternate housing. Walter stated that he did not believe that reasonable deadlines set for the sale of the house could be met under the circumstances, and that he preferred to be awarded a cash value for his share of the home.

Shirley argues that a court in a dissolution action may provide for the sale of all or part of the parties' assets in lieu of dividing them, if to do so is reasonable considering the facts, the circumstances of the parties, and the nature of their property. See *Kellner v. Kellner*, 8 Neb. App. 316, 593 N.W.2d 1 (1999). While it is within the purview of the court to order the sale of the property, the court clearly considered the circumstances and concluded that ordering the sale of the property in this case was not an appropriate or productive approach.

Section 42-365 states that the purpose of a property division is to distribute the marital assets equitably between the parties. The court considered the difficulties the parties have had in preparing the home for sale, and evidence of Shirley's "reluctance to fully commit to getting the house in a proper condition for it to sell." The court awarded the property to Shirley, effectively

making it her responsibility to maintain and sell the home, if she desired. Under the circumstances, we cannot find it was an abuse of discretion to award the marital home to Shirley.

### (c) Valuation of Marital Home

Shirley asserts the district court erred in valuing the property at $318,000, without regard to realtor fees, closing costs, taxes, and other related costs associated with selling the home. The district court correctly observed that the sale of the property would be the "most reliable evidence" of the property value, but a sale had not been achieved, despite the house having been listed in 2015 and 2016. It was unclear, at the time of trial, how quickly the property could be sold and there was evidence that Shirley was reluctant to fully commit to the sale. Therefore it was not an abuse of discretion for the court to not credit Shirley with the costs and fees related to the potential sale of the home. *Walker v. Walker*, 9 Neb. App. 694, 618 N.W.2d 465 (2000) (in order to receive credit for deduction of real estate commission, proponent must adduce evidence that the sale of real estate is imminent or would occur in the foreseeable future).

The parties testified that the asking price for the home at the time of trial was $355,000, and agreed that it was necessary to lower the price closer to $340,000. The court found there was no evidence that the house held that value, and opted to use the tax-assessed value of $318,000 instead.

The record shows that Walter proposed that the home be valued at $340,000. Shirley proposed that the property be sold, and the parties split the profits, costs, and fees equally. In the absence of a sales price, the court estimated the value of the property based upon objective tax values. The order for Shirley to keep the equity in the home and to pay Walter for half of the tax-assessed value represents a "middle ground" between the parties' proposals. Under the circumstances, we cannot find this was an abuse of discretion.

Shirley also argues that the district court abused its discretion by not ordering Walter to share in the costs of maintenance, upkeep, taxes, repairs, and other expenses. As noted above, the court found that Shirley demonstrated a "reluctance to fully commit" to the sale of the home. It would have been inequitable for the court to order Walter to pay for the taxes and fees which are attributable to Shirley's delay in pursuing the sale of the home. Further, during the parties' separation, Shirley continued to use and reside in the home, which was not subject to a mortgage, while Walter incurred the expense of renting an apartment. Under the circumstances, one could determine that the benefit received by Shirley offsets some of the expenses she incurred or will incur in the process of selling the home. We cannot find the court abused its discretion in dividing the value of the home equally between the parties.

### 3. VALUATION OF CASH ASSETS

Shirley asserts the district court erred in valuing certain assets when equalizing the marital estate. Specifically, she disputes the $2,000 set over to her as it is "not readily identifiable on either Shirley's or Walter's proposal." Brief for appellant at 31. She acknowledges that she did withdraw $2,000 on December 18, 2014 to pay "miscellaneous bills," but argues that it is unclear whether this is the $2,000 in question. Therefore, she asserts that it was an abuse of discretion to include it in the list of the parties' assets for equalization purposes.

The evidence shows that Shirley withdrew $320,000 from the Union Bank "main" account (UBT-6589), $145,000 from the Liberty National Bank "main" account (LNB-3727), and $60,000 from the Liberty National Bank designated as her social security account. On December 18, 2014, Shirley gave Walter a list of these assets, nothing that they were moved to personal accounts in her name. The list she provided to Walter contains a notation that she also withdrew $2,000 from the "bill-paying" account to "pay bills." The check register for the account shows that $2,000 was withdrawn on that date with a notation stating "withdrawal to pay bills didn't have check."

Walter's proposed division of assets states that Shirley made arrangements to move funds during the period between December 15 and 18, 2014. Walter's proposal includes a column labeled "SHIRLEY TOOK" which lists four values: $320,000, $145,000, $60,400, and $2,000, all of which match the amounts Shirley withdrew from the parties' joint accounts on December 18. This contradicts Shirley's assertion that the $2,000 sum was not readily identifiable on Walter's proposal.

Other than the vague references that these funds were used to "pay bills" there is no evidence regarding where the $2,000 went after it was withdrawn. The trial court heard and observed the witnesses and determined that this amount should be included in the distribution of the marital estate and upon our review we find it was not an abuse of discretion for the court to set the $2,000 over to Shirley.

Further, the purpose of a property division is to distribute the marital assets equitably between the parties. Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Patton v. Patton*, 20 Neb. App. 51, 818 N.W.2d 624 (2012). See, also, *Osantowski v. Osantowski, supra.* The court's equalization worksheet attached to the decree shows that the court intended the parties to each have approximately 50 percent of the marital estate and the inclusion or exclusion of the $2,000 does not substantially change the balance of assets between the parties.

Shirley assigns the district court erred in not setting the valuation date for all cash assets as of December 31, 2014, the end of the month immediately preceding the filing of the divorce action. It appears Shirley's assignment was related to the inclusion of the $2,000 withdrawal in the district court's property equalization, as the funds were withdrawn on December 18, and it is unclear where those particular funds were on December 31. As previously discussed, it was not an abuse of discretion for the court to include the $2,000 in the division of the marital estate. To the extent that Shirley's assigned error regarding the valuation date relates to any of the parties' other cash assets, it was not specifically argued in her brief. To be considered by an appellate court, an error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Schriner v. Schriner*, 25 Neb. App. 165, 903 N.W.2d 691 (2017). Any additional error with regard to the valuation date is waived.

Shirley also argues that the court abused its discretion in not setting over the $2,547.54 cashier's check from Frontier National Bank (FNB) to Walter in calculating the assets to be divided. The evidence shows that a cashier's check in the amount of $2,547.54 was issued in Walter's name on November 26, 2014. Shirley asserts that the funds were not received until January 2015, after the parties separated their accounts, but that they should have been included in the calculation of the marital estate. There are no financial statements or documents in the record

to show when or where the check was cashed or deposited. Similarly, it is unclear where the cashier's check funds originated.

Walter testified that in November 2014 he opened two Ameritrade accounts, one in each party's name. The parties jointly held two FNB accounts, one was designated as Walter's and the other was designated as Shirley's. He transferred $251,000 from his FNB account to his Ameritrade account, and transferred $251,000 from Shirley's FNB account to her Ameritrade account. On November 25, the balance of Walter's FNB account was $2,547.54 and the balance of Shirley's FNB account was $2,548.19. On November 26, check numbers 2009 and 2007 were debited from the parties' respective accounts and the balance of each account was zero.

The record shows that the value of the cashier's check, check number 3109, is equal to the balance of Walter's FNB account on November 26. However, as Shirley points out, the cashier's check is a separate instrument from check number 2009 which was drawn from the account on the same date. The record shows that checks were written from both parties' Frontier Bank accounts on November 26, leaving both accounts with zero balances. There is no evidence as to where either check was deposited or whether they were converted to cash.

Shirley argues that it was "clear error" not to include the value of the cashier's check in the property equalization under Walter's property because he "received those funds after the parties separated their accounts." Brief for appellant at 32. The only evidence regarding the cashier's check is Shirley's assertion that the check was negotiated in January 2015. We recognize that the trial court heard and observed the witnesses and determined that the cashier's check should be excluded from the property division. It is not an abuse of discretion for the court to exclude a cashier's check from the calculation of assets if it is unclear where the cashier's check was drawn from, when it was distributed, or where the funds went after distribution. Further, as previously stated, the court's equalization worksheet divided the marital estate roughly in half. The inclusion or exclusion of the cashier's check with regard to the division of property does not substantially change the balance of property between the parties.

4. DISTRIBUTION OF FIREARMS

The parties jointly owned multiple guns and the district court was tasked with dividing the property between the parties. The parties owned a Ruger Rifle (Rifle), a Smith and Wesson .38 Chief's Special (Chief's Special), a Beretta .25 Jetfire (Jetfire), a Beretta 12-guage shotgun (shotgun), a Smith and Wesson .357 Magnum (Magnum), a Colt 9 mm Luger (Luger), and a Smith and Wesson .32 Long Revolver (Long Revolver).

Shirley proposed that she keep the Rifle, the Magnum, the Chief's Special, and the Jetfire, and Walter keep the shotgun, Luger, and Long Revolver. Walter proposed that Shirley keep the rifle, Chief's Special and Jetfire, and he keep the shotgun, Magnum, and Luger. He did not include the Long Revolver in his proposed division of property.

In the decree Shirley was awarded the Rifle, the Chief's Special, and the Jetfire. Walter was awarded the shotgun, the Magnum, and the Luger. The Long Revolver was not explicitly awarded to either party.

On appeal, Shirley asserts the district court erred in (1) awarding the Chief's Special to Shirley, (2) awarding the Magnum to Walter, and (3) failing to award the Long Revolver to either party. Upon our review, it appears the district court intended to equitably divide the guns between

the parties, but seven guns cannot be equally divided between two people. We will review each of Shirley's assertions in turn.

Shirley asserts that the district court erred in awarding the .38 Chief's Special to her. Although Shirley identified the Chief's Special in her assignments of error, we note that she does not argue that the court erred in awarding her that gun. Therefore, we address only the issues that were both assigned and argued in this section of her brief; ownership of the Magnum and the Long Revolver. See *Schriner v. Schriner, supra.*

While Shirley testified that the Magnum was purchased for her use, it is undisputed that the Magnum was purchased during the parties' marriage and is therefore marital property. The parties each requested the Magnum and no evidence was presented as to the value of any of the guns. The district considered the evidence and resolved this issue in favor of Walter. We cannot find that the district court erred in awarding the Magnum to Walter.

Shirley correctly observes that the Long Revolver was not explicitly awarded to either party in the decree. However, the decree includes a provision following the distribution of the firearms to each party that "[e]ach party shall retain any other personal property not addressed in this decree which is in his or her possession subject to any liens or encumbrances thereon." There was no evidence presented regarding who was in possession of the Long Revolver at the time of trial. However, applying the provisions of the decree, the party in possession of the Long Revolver at the time of the decree is now the owner. The district court did not abuse its discretion in distributing the guns amongst the parties.

## VI. CONCLUSION

We find the trial court erred in applying the incorrect burden of proof with regard to the status of Walter's inheritance as marital or nonmarital property. However, we find the court did not abuse its discretion in classifying Walter's inheritance as nonmarital property and excluding it from the division of the marital estate. We conclude that the trial court did not err in awarding the marital home to Shirley, valuing it at the tax-assessed value of $318,000, and ordering her to pay Walter half of the value, without regard to costs associated with the maintenance and potential sale of the home. We find the court did not abuse its discretion in the division of the parties' assets and personal property.

AFFIRMED.